Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-75,246






JUAN EDWARD CASTILLO, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL FROM


CAUSE NO. 2004-CR-1461A IN THE 


186TH CRIMINAL DISTRICT COURT


BEXAR COUNTY






 Holcomb, J., delivered the opinion of the unanimous Court.





 Appellant was convicted in August 2005 of capital murder. Tex. Penal Code §
19.03(a). Based on the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant
to death. Art. 37.071 § 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071 § 2(h). 
After reviewing appellant's four points of error, we find them to be without merit. 
Consequently, we affirm the trial court's judgment and sentence of death.

 In his first point of error, appellant claims that the evidence is insufficient to
corroborate the accomplice-witness testimony as required by Article 38.14. Article 38.14
provides:

 A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.


Under this rule, the reviewing court eliminates all of the accomplice testimony from
consideration and then examines the remaining portions of the record to see if there is any
evidence that tends to connect the accused with the commission of the crime. Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The corroborating evidence need not be
sufficient by itself to establish guilt; there simply needs to be "other" evidence "tending to
connect" the defendant to the offense. We have noted that "unlike extrajudicial confessions,
testimony of an accomplice need be corroborated only as to facts 'tending to connect the
defendant with the offense committed' and not as to the corpus delicti itself." Gribble v.
State, 808 S.W.2d 65, 71 n.13 (Tex. Crim. App. 1990). And "[t]he non-accomplice evidence
does not have to directly link appellant to the crime, nor does it alone have to establish his
guilt beyond a reasonable doubt." McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.
1997). There must simply be some non-accomplice evidence which tends to connect
appellant to the commission of the offense alleged in the indictment. Id.

 Francisco Gonzales and Debra Espinosa were accomplice witnesses for the State. 
Both testified that they, appellant, and Teresa Quintana planned to rob the victim, Tommy
Garcia, Jr. Pursuant to the plan, Espinosa called Garcia and made arrangements for him to
pick her up and drive to Clamp Street, a secluded area, for sex. As Garcia and Espinosa were
parked on Clamp Street, appellant and Gonzales came up behind the car, appellant smashed
one of the windows with the butt of his gun, opened the car doors and demanded that Garcia
hand over his money. Appellant had a loaded gun, and Gonzales had a gun as well, but it
was "just for show" because it did not work. Gonzales and Espinosa both testified that
appellant shot Garcia numerous times as he attempted to run. Appellant contends that
without this testimony, the evidence does not "tend to connect" him to the offense. 
Following is a summary of the key non-accomplice testimony.

 Several people testified that they saw Garcia wearing his gold medallion necklace on
the night of the offense. The necklace was described as a "spinner" medallion on a thick
gold chain. Jessica Cantu testified that she saw appellant wearing the necklace on the
afternoon after the killing. She told appellant the necklace looked familiar. When Cantu saw
appellant a little while later, he was no longer wearing the necklace. Cantu told Garcia's
mother that she had seen appellant wearing Garcia's necklace.

 Frank Russell and Robert Jimenez both testified that they were at Jimenez's house
with Garcia in the late night and early morning hours of December 2 and 3, 2003, when
Garcia received a phone call from Espinosa. Garcia agreed to meet Espinosa and offered to
give Russell a ride home on the way. Jimenez testified that ten or fifteen minutes after
Garcia and Russell left, he received a phone call from Espinosa who was crying hysterically
and told him that someone had shot Garcia. Jimenez drove to Russell's and the two of them
went to Clamp Street where Espinosa said the shooting had occurred. When they arrived,
they saw Garcia's car with the doors open and Garcia lying face-down in the street. He
appeared dead. They told police what they knew about Garcia's plans to meet Espinosa.

 Gerardo Gutierrez testified that in March 2003, he was an inmate in the same area of
the Bexar County Jail as appellant. Appellant told Gutierrez that he and two friends, Frank
and Bita, planned to rob a person, but "it turned out wrong" when the victim took off running
and appellant shot him numerous times. Appellant told Gutierrez that the female accomplice,
Bita, was the one who had turned him in. He also said they would have a hard time
convicting him because they did not have the weapon. 

 Lucinda Gonzales testified that she was the younger sister of Francisco ("Frank")
Gonzales, one of the accomplice witnesses. At the time of the murder, Lucinda was living
in the same house with Gonzales and his girlfriend Teresa ("Bita") Quintana, among others. 
Lucinda testified that on the night of the offense, appellant called numerous times looking
for Gonzales, and eventually came over with his girlfriend, Debra Espinosa. Appellant and
Gonzales asked to borrow Lucinda's car, and she finally agreed to let Teresa drive it. 
Appellant, Gonzales, and Teresa left in Lucinda's car around 9:30 p.m. that evening. 
Espinosa left earlier in her own car. Teresa returned around 2:30 a.m., and she told Lucinda
that Gonzales had been arrested on a child-support warrant. The following day, Lucinda saw
a news report about Garcia's murder. A couple of days later, Gonzales was charged with
Garcia's murder and arrested. Later that day, Lucinda covertly listened in on a phone
conversation between Teresa and appellant. Lucinda described the exchange: "I heard
Teresa say that, you know, what was going to happen to Frank [Gonzales]. And [appellant]
said nothing, because he didn't do it, I did it, but they ain't going to know it because they
ain't got any evidence. . . . He said that he - after the shooting, that he had ran through an
open field and he discarded the - he had a mask, gloves, and the gun, and that he threw
everything in the open field." Lucinda called the police and reported what she had heard. 
A few days later, Lucinda confronted appellant and called him a murderer. Appellant made
a threatening gesture toward her and told her that Gonzales was going to stay locked up.

 Bryan Anthony Brown testified that at the time of the offense he was fifteen and living
in the same house with his aunt Lucinda, his uncle Frank Gonzales and Frank's girlfriend
Teresa, and others. On the night of the offense, appellant and his girlfriend came over. 
Appellant had a gun and a bullet-proof vest. Appellant, his girlfriend, Gonzales, and Teresa
all left in Lucinda's car. Brown found out the next day that Gonzales had been arrested. A
couple of days later, Brown was riding in a car with appellant and Teresa when appellant said
that he had to get out of town, that he had shot someone a bunch of times, and that he had
hidden the gun and vest in a field.

 The above non-accomplice testimony includes evidence that appellant was seen
wearing the victim's necklace shortly after the murder, that appellant was seen with a gun
and with the accomplices in the hours before the murder, that the victim made a plan just
prior to his murder to meet one of the accomplices, that appellant told a fellow inmate that
he and accomplices had planned a robbery, that appellant shot the victim multiple times when
the victim attempted to run, that Lucinda overheard appellant admit to Teresa that he was
responsible for shooting someone, and that Brown overheard a similar conversation between
appellant and Teresa. This evidence is sufficient to "tend to connect" appellant with the
murder and robbery. Art. 38.14. Point of error one is overruled.

 In point of error two, appellant claims that the evidence is factually insufficient to
support a finding that he robbed the victim or that he shot the victim. Evidence is factually
insufficient when, although legally sufficient under a Jackson v. Virginia (2) analysis, the
evidence is "so weak" that the verdict "seems clearly wrong or manifestly unjust," or the
verdict is "against the great weight and preponderance of the evidence." Watson v. State, 204
S.W.3d 404, 414-15 & 417 (Tex. Crim. App. 2006). 

 Appellant refers to the testimony of Lucinda and Brown as "clearly unfairly biased,
late in forthcoming, last hour rescuing, highly suspicious testimonies." He says that Lucinda
and Brown "went into hiding" shortly after the offense and "conveniently surfaced" "in
dubious support of" Gonzales's plea-bargain agreement. Appellant also suggests that
Gutierrez was biased as the "ex-boyfriend of Francisco Gonzales's niece." Appellant points
to the testimony of defense witness Ralph Edward Pedrigone as evidence that Gonzales, not
appellant, was the shooter. Pedrigone testified that he was an inmate in the same area of the
jail with accomplice Gonzales and that after seeing a television news report about Garcia's
murder, Gonzales stated, "[t]hat's the guy I killed. I mean they killed." Appellant also
contends the evidence is insufficient to support the robbery element of the capital murder
because the victim was found wearing five pieces of jewelry and had $574 and a baggie of
marijuana in his possession.

 While appellant points to factors that might bear on some of the witnesses' credibility,
he does not demonstrate that the evidence taken as a whole was factually insufficient to
support the murder or the robbery elements. Accomplices Gonzales and Espinosa both
testified that they planned the robbery of Garcia with appellant and that appellant shot Garcia
numerous times. Their testimony was consistent with and corroborated by the non-accomplice evidence described above. The fact that Garcia had money and jewelry in his
possession after the botched robbery does not mean that appellant did not murder him in the
course of "committing or attempting to commit the offense of robbery" as charged in the
indictment. See Tex. Penal Code § 19.03(a)(2) (emphasis added). And the fact that some
of the witnesses had credibility issues is not enough to declare the evidence factually
insufficient. Appellant was able to question their credibility on cross-examination, and the
jury found them sufficiently credible. Appellant points to Pedrigone's testimony as evidence
in his favor, but the testimony of this one witness does not amount to such "great weight" as
to render the conviction "clearly wrong" or "manifestly unjust." Moreover, even Pedrigone's
testimony does not exonerate appellant; it is subject to more than one interpretation and
would still support a finding of party liability. Point of error two is overruled.

 In point of error three, appellant claims that the death penalty is cruel and unusual
punishment in violation of the Eighth Amendment. He contends that, under evolving
standards of decency, the death penalty should be abolished, and he therefore seeks to have
his death sentence commuted to life.

 The death penalty does not violate the Eighth Amendment. Threadgill v. State, 146
S.W.3d 654, 672-73 (Tex. Crim. App. 2004)(citing Jurek v. Texas, 428 U.S. 262 (1976)). 
Appellant does not assert anything about the facts of his case that would render imposition
of the death penalty unconstitutional as applied to him. See Roper v. Simmons, 543 U.S. 551
(2005); Atkins v. Virginia, 536 U.S. 304 (2002). Point of error three is overruled.

 In point of error four, appellant claims that the trial court erred when it denied
appellant's pretrial motion objecting to the testimony of the two accomplices witnesses on
the ground that their testimony would violate Rule 3.04 of the Texas State Bar Rules of
Professional Conduct, and 18 U.S.C. §§ 201(b)(1)(A), 201(b)(3). Appellant contends that
because Gonzales and Espinosa had entered into plea-bargain agreements under which they
would receive forty-year sentences instead of the death penalty in exchange for their
testimony against appellant, their testimony violated the federal anti-bribery statute and the
state rules of professional conduct and should have been excluded.

 The vast majority of federal courts, including the Fifth Circuit, have rejected such
claims about the federal anti-bribery statute. United States v. Haese, 162 F.3d 359, 366-68
(5th Cir. 1998)(concluding, consistent with cases cited therein, that "it is evident to this Court
that Congress did not intend for section 201(c)(2) to be used when prosecutors offer lenity
for a witness' truthful testimony" and to "interpret section 201(c)(2) in any other way would
apply shackles to the government in its pursuit to enforce the law"). We agree with the
rationale of the Fifth Circuit and decline to follow the sole authority cited by appellant,
United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), which was vacated by an en banc
court on rehearing. United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999)(en
banc)(vacating panel opinion and affirming trial court's denial of suppression motion).

 Neither are we persuaded by appellant's claim under the state disciplinary rules. Rule
3.04(b) provides that a lawyer shall not:

 falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to
pay or acquiesce in the offer or payment of compensation to a witness or other
entity contingent upon the content of the testimony of the witness or outcome
of the case.


Tex. Disciplinary R. Prof'l Conduct 3.04, reprinted in Tex. Gov't Code ann., tit. 2,
subtit. G app. A (Tex. State Bar R. art. X, § 9). Even if a plea bargain could be considered 
"payment of compensation" within the meaning of the rule, the plea bargain in this case was
not contingent upon the content of the witness's testimony but only upon its truthfulness. (3) 
Appellant has not, therefore, demonstrated a violation of this rule. Moreover, a disciplinary
rule violation is not a "violation of the law" for the purpose of excluding evidence under the
state exclusionary rule, Article 38.23. (4) Point of error four is overruled.

 The judgment of the trial court is affirmed.


Delivered May 2, 2007


Publish
1. Unless otherwise indicated, all references to articles refer to those in the Texas Code of
Criminal Procedure.
2. 443 U.S. 307 (1979).
3. See United States v. Barnett, 197 F.3d 138, 144-145 (5th Cir. 1999)(quoting United
States v. Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir. 1987))("No practice is more
ingrained in our criminal justice system than the practice of the government calling a
witness who is an accessory to the crime for which the defendant is charged and having that
witness testify under a plea bargain that promises him a reduced sentence. . . . [T]he
compensated witness and the witness promised a reduced sentence are indistinguishable in
principle and should be dealt with in the same way.").
4. Rocha v. State, 16 S.W.3d 1, 14 (Tex.Crim.App. 2000); Pannell v. State, 666
S.W.2d 96, 98 (Tex.Crim.App. 1984).