Opinion issued October 4, 2007









Opinion
issued October 4, 2007

 

 

 

 

 

 

 




 
 
 
 
 




     

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 



 

NO. 01-05-01152-CR

NO. 01-05-01178-CR

 



 

BOBBY CHARLES LONG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 400th District
Court

Fort Bend County, Texas

Trial Court Cause No. 38,774A

 



 

O P I N I O N








Appellant, Bobby
Charles Long, appeals from state jail felony convictions for fraudulent use of
identifying information[1]
and credit card abuse.[2] 
See Tex. Pen. Code Ann. ''  32.31, 32.51 (Vernon Supp. 2006).  Appellant pleaded not guilty to both counts and not true to the
punishment enhancement paragraphs that asserted prior convictions for credit
card abuse and tampering with a government record.  The jury found appellant
guilty of both offenses.  The trial court found true both punishment
enhancement paragraphs and sentenced appellant to 14 years= confinement in
prison for each count, to run concurrently.  In four issues, appellant contends
that (1) the evidence does not sufficiently corroborate accomplice witness
testimony, (2) the evidence is legally insufficient, (3) the evidence is
factually insufficient, and (4) the trial court erred by Apartially
overruling [his] motion in limine@ and overruling a
challenge for cause.  We conclude that the evidence is legally and factually
sufficient, the trial court=s ruling on the motion in limine was not
reversible error, and appellant failed to preserve error regarding the denial
of his challenge for cause.  We affirm.

Background








Complainant Lisa
Creson, an attorney, previously worked in private practice with Barbara Hudson,
whose legal assistant was Penny Cooper.  The three developed a friendship. 
Around late summer 2001, Cooper, a single mother of three, confided to Creson
that she was nervous about affording school clothing for her children.  Creson
offered the use of her Dillard=s credit card to Cooper, who had no
credit.  Cooper kept up with the payments for the purchases of the school
clothes, but ran a balance on the Dillard=s card.

Creson also
assisted Cooper when Cooper rented a car by giving the car rental company
Creson=s MasterCard as
security for the rental.  Creson usually went with Cooper to give the
MasterCard to the car rental company.  Cooper did not keep the MasterCard and
paid the rental charges in cash.

When a $100 charge
showed up from Cooper=s use of the MasterCard in connection with
a car rental, Cooper called MasterCard to ask about that charge.  During the
call, Cooper learned of an offer from MasterCard to transfer another credit
card=s balance to the MasterCard
for a lower interest rate.  In order to complete the transfer, Cooper needed
Creson=s social security
number and her mother=s maiden name.  Creson faxed Cooper a copy
of her MasterCard with the card number written below the image of the card. 
Creson also gave Cooper her address, birth date, social security number, and
her mother=s maiden name, over the telephone.  Creson=s mother had not
gone by her maiden name for approximately 51 years.  Cooper wrote the
information on the piece of paper with the faxed copy of Creson=s MasterCard.








During this same
period of time, Cooper dated appellant, who was regularly at Cooper=s house.  Cooper
said that appellant had access to the piece of paper that had Creson=s MasterCard
information and identification information, which he could have copied or faxed
with Cooper=s copier or fax machine.

Appellant was in
the midst of starting up an ambulance business, Odyssey EMS.  Cooper gave
Creson several of appellant=s business cards for Odyssey EMS to pass
out to her mother and her mother=s elderly
neighbors in case they might need an ambulance.  Creson received a telephone
call in September 2003 from Rudy Kircher regarding an office space lease for
Odyssey EMS bearing the signature of a person named ALisa@ but with Creson=s mother=s maiden name as
the last name.  He asked Creson to Amake the check
good@; Creson, however,
had no idea what Kircher meant.  Creson realized from Kircher=s description that
the person who had signed the lease was Penny Cooper.  Creson cancelled both
the MasterCard and Dillard=s card, and contacted the police.  Creson=s MasterCard
statement for September 2003 revealed approximately $10,000 in unauthorized
charges, which turned out to be related to the ambulance business.








Cooper denied that
she filled out the lease application form about which Kircher called Creson. 
Kircher explained that he faxed the application to appellant, who first
submitted a name that did not have sufficient credit for the lease.  Kircher
then faxed appellant a new form, which was returned with the name and signature of a
fictitious name ending in Creson=s mother=s maiden name,
along with Creson=s social security number.  Kircher
presumed appellant or someone at appellant=s office returned
the new lease form with the fictitious name on it.

Cooper said that
appellant called her to sign the lease in the place of someone who could not
make the signing.  When she arrived at the place to sign the lease, Cooper saw
the fictitious name .  She nonetheless signed that name on the documents,
knowing she was Adoing wrong.@  Cooper said she
was not sure at the time what the source of the name was, though it sounded
familiar.  She later admitted that she knew she was fraudulently using the name
when she signed the lease.

Detective Mutchler
of the Stafford Police Department testified that he became suspicious during
his investigation that the $10,000 in unauthorized charges that Creson reported
may have come from appellant.  At appellant=s business,
Mutchler found a piece of paper with Creson=s name, address,
social security number, and mother=s maiden name.

According to
Creson=s MasterCard
statement, all the charges occurred between August 25 and September 4, 2003. 
Mike Wetzel, owner of Lone Star Emergency Vehicle Services, testified that
appellant used Creson=s MasterCard information over the phone to
pay for a series of repairs on a used ambulance purchased by Odyssey EMS.  He
said that appellant told him the card belonged to his girlfriend, identifying
her by the fictitious name.  Cooper and appellant were later arrested for
fraudulent use of identifying information.








Appellant gave an
oral statement to a police officer after his arrest.  In his statement,
appellant denied knowing the person whose name was signed to the lease. 
Appellant stated that Creson had faxed the piece of paper with her information
knowing it would be used in his business, and that he was informed through
Cooper that Creson had permitted this use of the credit card for the business. 
Appellant further contended that Cooper had free use of Creson=s credit cards, Asome of which
[Cooper] still has.@

At trial,
appellant filed a motion for the court to allow him to testify free from
impeachment, which the court granted in part and denied in part.  At the
hearing, appellant asserted that the State intended to impeach him with prior
convictions.  The State agreed not to mention appellant=s 1993 conviction
for misrepresentation of certification as an Emergency Medical Technician
(EMT).  The trial court ruled that the State could not impeach appellant=s testimony with
his convictions for burglary of a building in 1993 and carrying a weapon on
school premises in 1986.  However, the trial court ruled that it would  allow
the State to impeach appellant with a prior conviction for credit card abuse,
and a prior conviction for tampering with a government record, for which
appellant was still on parole at the time of this trial.








Cooper pleaded
guilty to fraudulent use of identifying information and received three years= probation. 
Cooper testified against appellant at his trial, denying that she had allowed
him to use Creson=s credit cards or information.  Cooper
also said appellant tried to convince her to tell police that she misled him. 
Cooper further testified that the prosecutor in the current case had not Amade any sorts of
deals@ with her, and
that no one in the district attorney=s office did
anything to influence her testimony.

Appellant=s business
partners, Basil Abdullah and James Henry, testified that appellant told them
that Cooper=s aunt agreed to help financially with the business. 
Abdullah said that during a phone call, appellant said he was at this aunt=s house,
discussing her investment in the business.  Henry also testified that appellant
said that a person, who he referred to by Creson=s mother=s maiden name,
agreed to co-sign the office space lease.  Abdullah said appellant told him
Cooper was permitted to sign the lease on behalf of AAunt Lisa,@ who was out of
town.

Sufficiency of
Evidence

In his first and
second issues, appellant contends that the evidence is legally and factually
insufficient to support his conviction because the State failed to corroborate
the accomplice-witness testimony of Cooper.  

A. Law Requires
Proof of Lack of Consent








To establish the
offense of credit card abuse, the State had to prove beyond a reasonable doubt
that appellant, with the intent to obtain a benefit fraudulently, presented or
used Creson=s credit card with knowledge that the card was not
issued to him and was used without the effective consent of the cardholder.  See
Tex. Pen. Code Ann. ' 32.31(b)(1) (Vernon Supp. 2006).  Similarly, to establish the offense of fraudulent use of identifying
information, the State had to prove beyond a reasonable doubt that appellant
obtained, possessed, transferred, or used Creson=s identifying
information without her consent and with intent to harm or defraud another.  See
id. ' 32.51(b) (Vernon Supp. 2006).

For both offenses,
appellant challenges only the State=s proof of lack of
consent.  Specifically, appellant contends that Cooper and Creson gave him
consent to use the credit card and identification information, and that he
formed a reasonable belief that he had their consent.  See id. ' 8.02 (Vernon Supp. 2006). 

B. Sufficiency of
Non-Accomplice Testimony

Cooper testified
against appellant by stating that he did not have consent. Cooper is an
accomplice as a matter of law, as she was indicted and pleaded guilty to the
charge of fraudulent use of identifying information, which arose from the same
set of facts as appellant=s charges.  See Cocke v. State, 201
S.W.3d 744, 747B48 (Tex. Crim. App. 2006) (citing DeBlanc
v. State, 799 S.W.2d 701, 708 (Tex. Crim. App. 1990)). 








A conviction
cannot be had on the testimony of an accomplice unless corroborated by other
evidence that tends to connect the defendant with the offense committed, and
the corroboration is not sufficient if it merely shows the commission of the
offense.  TEX. CODE CRIM. PROC. Ann. art. 38.14 (Vernon Supp. 2006).  In assessing the sufficiency of corroborative evidence, we eliminate
the testimony of the accomplice witness from consideration and examine the
testimony of other witnesses to ascertain whether the non-accomplice evidence
tends to connect the accused with the commission of the offense.  Castillo
v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).  The non-accomplice
evidence need not be sufficient itself to establish the accused=s guilt beyond a
reasonable doubt.  Id.  All the law requires is that some non-accomplice
evidence tends to connect the accused to the commission of the offense.  Id.  








Excluding the
testimony by Cooper, the accomplice, other evidence tends to connect the
accused to the commission of both offenses.  See id. at 693.  Creson
testified that she did not consent to give appellant use of her credit card or
information, nor did she give him any information.  Additionally, the
circumstantial evidence suggests appellant was unfamiliar with Creson.  The
piece of paper containing Creson=s credit card
number and full identifying information, including her mother=s maiden name, her
birth date, and her address, was found at appellant=s business.  The
information is written in such a way as to likely make one who knows nothing of
her and who looks at the paper for the first time to think that her name is the
fictitious name.  The lease signature uses this name.  But the second name on
the paper was not Lisa=s last name; rather, it was her mother=s maiden name. 
The use of her mother=s maiden name on the lease suggests that
whoever caused the name to be put on the original lease application likely did
not know Creson.

Contradictions in
appellant=s representations to others also indicate that he was
aware of Creson=s lack of consent to use the credit
card.   Appellant told his business partners that AAunt Lisa@ allowed him to
use the credit card for the business.  In another version about who Lisa was,
appellant told Wetzel that the credit card he used to pay for ambulance repairs
belonged to his girlfriend, Lisa [maiden name].  In conflict with each of these
versions, appellant told a police officer that he had no idea who Lisa [maiden
name] was.  Appellant also contended that he was deceived into believing that
he had Creson=s effective consent to use the credit card.  Appellant=s inconsistent
explanations for using the credit card are circumstances that also show he knew
he lacked consent to use the card.        

Having reviewed
the circumstances of the offense and the evidence from the non‑accomplices,
we conclude that sufficient non‑accomplice evidence tends to connect
appellant to the commission of the offense, under article 38.14.  See TEX. CODE CRIM. PROC. Ann. art. 38.14; Castillo, 221
S.W.3d at 691.

C. Legal
Sufficiency of the Evidence








Appellant further
contends that the evidence is legally insufficient to establish his knowledge
of lack of consent for both credit card abuse and fraudulent use of identifying
information.  As we have recently noted, a challenge of insufficient evidence
to support the verdict is not the same as a challenge of insufficient
corroboration.  Utomi v. State, No. 01-05-00653-CR, 2007 WL 1953898, at
*3 (Tex. App.CHouston [1st Dist.] July 6, 2007,
pet. filed) (citing Cathey v. State, 992 S.W.2d 460, 462B63 (Tex. Crim.
App. 1999)).  When, as here, we are asked to review the legal sufficiency of
the evidence, we review all the evidence in the light most favorable to
the judgment to determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Id. (citing Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000)).  We do not eliminate
the testimony of an accomplice when analyzing the legal sufficiency of the
evidence as a whole.  Id. at *3 (citing Smith v. State,
No. 2-04-120-CR, 2005 WL 852144, at *5 (Tex. App.CFort Worth Apr.
14, 2005, pet. ref=d) (not designated for publication)) (A[W]hen reviewing
the legal and factual sufficiency of the evidence, we consider all of the
evidence, including accomplice-witness testimony.@); see also
Simmons v. State, 205 S.W.3d 65, 72 (Tex. App.CFort Worth 2006,
no pet.).  The jurors are the exclusive judges of the facts, the credibility of
the witnesses, and the weight to give their testimony.  Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  A jury is entitled to accept one
version of the facts and reject another, or reject any part of a witness=s testimony.  Id.








          Viewing the evidence in the
light most favorable to the jury=s verdict, the evidence shows that
Cooper, the accomplice, stated that she did not give appellant permission to
use Creson=s credit card.  Creson also denied giving appellant consent.  A rational
jury could have found beyond a reasonable doubt that appellant was aware that
he did not have consent to use the credit card and identifying information.  See
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  We hold the
evidence is legally sufficient to establish appellant=s guilt for credit card abuse and fraudulent use of
identifying information. 


We overrule appellant=s first issue.

D. Factual
Sufficiency of the Evidence

In his second
issue, appellant contends that the evidence is factually insufficient to establish
his knowledge of lack of consent in both charges.  Appellant contends that A[e]very statement
made by the [appellant] to his partners and to law enforcement indicated that
he believed that he had permission to use the identifying information and the
credit card.@

As with a
challenge to the legal sufficiency of the evidence, we view all the
evidence in a factual sufficiency review, including accomplice-witness
testimony.  See Utomi, 2007 WL 1953898, at *3 (citing Ladd v. State,
3 S.W.3d 547, 557 (Tex. Crim. App. 1999)).  We may not re-weigh the evidence
and substitute our judgment for that of the fact-finder.  King, 29
S.W.3d at 562.  The fact-finder alone determines what weight to place on
contradictory testimonial evidence because that determination depends on the
fact-finder=s evaluation of credibility and demeanor.  Marshall
v. State, 210 S.W.3d 618, 626 (Tex. Crim. App. 2006). 








When conducting a
factual-sufficiency review, we view all of the evidence in a neutral light.  Ladd,
3 S.W.3d at 557.  We will set the verdict aside only if (1) the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict
is against the great weight and preponderance of the evidence.  Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first prong of Johnson,
we cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App.
2006).  Under the second prong of Johnson, we cannot declare that a
conflict in the evidence justifies a new trial simply because we disagree with
the jury=s resolution of
that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury=s verdict.  Id. 
In conducting a factual-sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury=s verdict.  See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








To show that he
had a reasonable belief he had consent to use the credit card, appellant points
to his statements about his use of the credit card.  The record shows, however,
that appellant made contradictory statements by telling his business partners
that Cooper=s Aunt Lisa allowed him to use the credit card and
information as her investment in the business.  Appellant told Wetzel, from
whom he purchased ambulance repairs, another version about the credit card by
telling him that it belonged to appellant=s girlfriend, Lisa
[maiden name].  Detective Mutchler received yet another version that Cooper
told appellant that she obtained permission from Creson to use the credit card
in their business.  While Creson admitted that Cooper  gave her appellant=s Odyssey EMS
business cards, she said the only reason was so that she could hand them out to
her mother and her mother=s elderly neighbors, in case they needed
an ambulance.








Appellant further
contends that the inferences from circumstantial evidence support his
assertions.  He only used the credit card for business-related items, and made
no effort to conceal his use of the card.  Appellant asserts that, had he truly
believed that he did not have consent to use the card, he would not have been
so open about its use.  Cooper=s testimony that appellant tried to get
her to take the blame for his actions, however, could indicate that appellant
knew his actions were wrong, and that he planned to try to escape liability by
using Cooper as his witness.  Furthermore, nothing in the record indicates that
appellant knew Creson=s proper name until confronted by
Detective Mutchler, which was consistent with the way in which Creson=s information was
written on the piece of paper found in appellant=s office, stating ALisa Creson
[maiden name].@  The misuse of the name indicates that appellant had
not been granted the informed permission he claimed to have received from
Cooper or Creson.  

Although appellant=s testimony and
his lack of concealment in his use of the card and information could show that
he believed he had consent from Cooper and Creson, that testimony is impeached
by appellant=s various other statements about why he had the credit
card and information; by testimony from Cooper and Creson that they did not
give him or Cooper consent to use the card or information; and by
circumstantial evidence that the person who used the card did not know that her
mother=s maiden name was
not Creson=s last name.

In support of his
contention of factual insufficiency of the evidence, appellant relies on Vodochodsky
v. State, 158 S.W.3d 502 (Tex. Crim. App. 2005).  In Vodochodsky,
the defendant was convicted of capital murder based on his assistance with his
roommate=s plan to lure
police officers to his home and kill them.  Id.  The Court of Criminal
Appeals held that the evidence, which involved the defendant=s admissions to
third parties, was factually insufficient to support the conviction because
none of the evidence tending to prove the defendant=s guilt indicated
that he acted with intent to promote or assist his roommate in the killings,
and that his statements were devoid of information on the details of the
alleged murder plot.  Id. at 510B11.  Here,
however, appellant=s statements to others were deceptive and
inconsistent and thus the jury could reasonably construe them as an indication
of appellant=s guilt.








We conclude that
the evidence is not so weak that the verdict is clearly wrong and manifestly
unjust, and that the verdict is not against the great weight and preponderance
of the evidence.  See Johnson, 23 S.W.3d at 11.  We hold that the
evidence is factually sufficient to establish appellant=s guilt for credit
card abuse and fraudulent use of identifying information.  

We overrule
appellant=s second issue.

Motion to Testify
Free From Impeachment








In his third
issue, appellant contends that the trial court erred by denying his pretrial Amotion in limine@ that sought to
prevent impeachment of appellant with his past convictions for (1) credit card
abuse and (2) tampering with a government document.[3] 
To exclude the State=s use of these prior convictions for
impeachment of appellant=s testimony at trial, appellant filed a
motion to exclude evidence, in addition to a motion in limine; appellant
appears to use these terms interchangeably.  The trial court denied these
motions, ruling that if appellant testified, the State could impeach him with
his prior convictions for credit card abuse and tampering with a government
document.[4] 
Appellant did not testify and the State never used the prior convictions during
the guilt-innocence phase of trial.  Appellant never told the trial court that
he was not testifying due to its ruling to allow impeachment with these prior
convictions.  On appeal, however, appellant claims he did not testify due to
the trial court=s ruling to allow impeachment with the
prior convictions.








 To preserve error
from a trial court=s pretrial ruling to allow impeachment of
an appellant=s testimony with prior convictions, an appellant must
testify, because without the testimony, a harm analysis cannot be conducted. 
See Morgan v. State, 891 S.W.2d 733, 735 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (Aspecifically
[holding] that a defendant must testify in order to raise and preserve a claim
of improper impeachment through prior convictions@).  Here, as in Morgan,
the disputed motion is not a motion in limine, but rather a pre-trial motion to
testify free of impeachment on which the court ruled.  See id. at 734B735.  In Morgan,
we adopted the reasoning of the United States Supreme Court in its
ruling in Luce v. United States, 469 U.S. 38, 105 S. Ct. 460 (1984),
wherein the Court held that the federal corollary to Texas Rule of Evidence 609
requires that a defendant testify in order to preserve a pretrial ruling on the
admissibility of prior conviction impeachment evidence.[5] 
See Morgan, 891 S.W.2d at 735 (AThe reasoning of Luce
is persuasive.@).  The Morgan court summarized Luce=s reasoning, which
turned on the difficulty of appellate review based upon testimony that never
took place:

The court in Luce was most
concerned with the fact that a reviewing court cannot weigh the probative value
against the prejudicial effect without a factual record of the defendant=s testimony.  In contrast, if a
defendant testifies and is impeached, the reviewing court can examine the
defendant=s testimony, the prosecutor=s cross‑examination, and the
jury arguments to determine the impact of the impeachment.  The court in Luce
was also concerned that the alleged harm would be speculative, because the
trial court would be free to change her previous ruling and prohibit the
impeachment.  Alternatively, the prosecutor might decide not to use an arguably
inadmissible prior conviction.  Finally, even assuming that these difficulties
could be overcome, the reviewing court would be unable to conduct a harmless
error analysis if it determined that the prior convictions had been improperly
admitted, because the error would always be harmful if it presumptively
prevented the defendant from testifying in his own defense.

 

Morgan, 891 S.W.2d at
735 (discussing Luce) (citations omitted). 








We have since
several times affirmed the general rule that a defendant must testify to
preserve error on a claim of improper impeachment through prior convictions.  See,
e.g., Leal v. State, 2006 WL 1275909, at *3 (Tex. App.CHouston [1st
Dist.] Oct. 4, 2006, pet. ref=d) (mem. op., not designated for
publication) (Abecause he did not testify, appellant waived any
complaints about the trial court=s in limine
rulings regarding the use of his prior, probated felony conviction for
impeachment purposes@); Clark v. State, 1998 WL 47819,
at *2 (Tex. App.CHouston [1st Dist.] Jan. 22, 1998, pet.
ref=d) (not designated
for publication) (Abecause appellant did not testify, he did
not preserve his claim of improper impeachment through his prior convictions@).[6]

Both appellant and
the State build a case for the merits of granting and denying, respectively,
the motions in limine based upon the Theus factors for weighing probative
versus prejudicial value of evidence of convictions.  However, without the
defendant=s testimony, we cannot sufficiently review for error. 
See Luce, 469 U.S. at 41B42, 105 S. Ct. at 463.  Because appellant
did not testify at trial, he failed to preserve error regarding his pretrial motion to testify free
from impeachment.  See Morgan, 891 S.W.2d at 735.

We overrule appellant=s third issue.

 








Denial of
Challenge for Cause

In his fourth
issue, appellant contends that the trial court erred in overruling the defense
challenge for cause of Juror Number Six.  The Court of Criminal Appeals has set
out the requirements for preserving error on a trial court=s allegedly
erroneous denial of a challenge for cause:

$       The voir dire Aof the individual venireperson@ must be recorded and transcribed; 

 

$       The appellant must assert Aa clear and specific challenge for
cause clearly articulating the grounds therefor@;

 

$       After the challenge for
cause is denied by the trial court, appellant must use a peremptory strike on
that juror;

 

$       All peremptory challenges must
be exhausted;

 

$       When all peremptory
challenges are spent, appellant must request additional peremptory challenges;
and

 

$       The appellant must assert
that an objectionable juror sat on the case.

 

See Jacobs v.
State, 787 S.W.2d 397, 405 (Tex. Crim. App. 1990); see also Johnson v.
State, 982 S.W.2d 403, 405 (Tex. Crim. App. 1998) (citing Jacobs and
noting that appellant Atook the necessary steps to preserve any
error for appellate review@).  Appellant did not use a peremptory
strike on Juror Number Six, nor did he request additional strikes.  Therefore,
appellant=s challenge is not preserved.

We overrule
appellant=s fourth issue.

 








Conclusion

We affirm the
trial court=s judgment.

 

 

 

Elsa Alcala

Justice

 

Panel consists of Chief Justice Radack and Justices Alcala
and Bland. 

 

Publish.  Tex. R.
App. P. 47.2(b).









[1]           Count I in Trial Court Cause Number 38774A,
which is appellate number  01-05-01152-CR





[2]           Count II in Trial Court Cause Number
38774A, which is appellate number 01-05-01178-CR





[3]           Appellant states in his brief that his
motion was also denied regarding burglary of a building, but the record
indicates that the motion was granted when the court ruled on it the first day
of trial, after both the State and appellant were able to perform further
research on the matter.  Appellant also offers no arguments regarding this
offense, nor does he explicitly contest it. 





[4]        As to the charge of credit card
abuse, appellant asserts that (1) more than ten years have elapsed since either
conviction of the offense or release from confinement, and (2) the probative
value of the offense is not supported by specific facts and circumstances to
substantially outweigh its prejudicial effect, as required by Rule 609.  See
Tex. R. Evid. 609(b).  As to the
charge of tampering with a government document, appellant contends that
application of the factors enumerated in Theus v. State, 845 S.W.2d 874
(Tex. Crim. App. 1992), indicate that the probative value of evidence of the
conviction does not outweigh its prejudicial effect. 





[5]           The Supreme Court in Luce used the
term in limine Ain a broad sense to refer to any motion, whether made
before or during trial, to exclude anticipated prejudicial evidence before the
evidence is actually offered.@  Luce v.
United States, 469 U.S. 38 (1984).  We note that the Court of Criminal Appeals has held that A[f]or error to be preserved with
regard to the subject matter of the motion in limine it is absolutely necessary
that an objection be made at the time when the subject is raised during the
trial.@  Gonzales v. State, 685
S.W.2d 47, 50B51 (Tex. Crim. App. 1985) (citing Thomas
v. State, 477 S.W.2d 881 (Tex. Crim. App. 1972)).





[6]           Though the Court of Criminal Appeals has
not addressed this issue specifically, it has positively cited Luce in
applying it by analogy to its ability to review the exclusion of psychiatric
expert testimony when appellant refused to submit to State psychiatric
examination pursuant to Lagrone v. State, 942 S.W.2d 602 (Tex. Crim.
App. 1997).  See Saldano v. State, 2007 WL 1610422, at *7B8 (Tex. Crim. App. 2007) (AIn order to be entitled to appellate review of the
trial court=s ruling not limiting a Lagrone examination to
rebutting any testimony that [his psychiatrist] might have provided on
appellant=s mental decline, we decide that appellant was
required to submit to the Lagrone examination and suffer any actual use
by the State of the results of this examination.@)