

# IN THE
## TENTH COURT OF APPEALS

### No. 10-07-00355-CR

**JEROME WHALEN DUNCAN**
**A/K/A JERRY WHALEN DUNCAN,**

**Appellants**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 249th District Court**
**Somervell County, Texas**
**Trial Court No. 249-00640**

## MEMORANDUM  OPINION

A jury found Appellant Jerome Whalen Duncan a/k/a Jerry Whalen Duncan guilty of driving while intoxicated (third offense) and assessed his punishment, enhanced by one previous felony conviction, at twenty years' imprisonment and a $5,000 fine.  By one point, Duncan contends that the evidence of intoxication is factually insufficient to support his conviction.  We will affirm.

The factual sufficiency of the evidence standard of review was recently restated by the Court of Criminal Appeals:

In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *accord Johnson v. State*, 23 S.W.3d at 7. Only one question is to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Watson [v. State]*, 204 S.W. 3d [404, 415 (Tex. Crim. App. 2006)]. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11); *see also Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). "[A]n appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the . . . evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson*, 204 S.W.3d at 417. A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524. Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Watson*, 204 S.W.3d at 417; *Cain [v. State]*, 958 S.W.2d [404, 410 (Tex. Crim. App. 1997)].

*Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).

The evidence viewed in a neutral light is as follows. At approximately 9:15 p.m. on September 29, 2006, Deputy Allen West of the Somervell County Sheriff's Department observed a white van driven by Duncan almost hit the curb as it was approaching a stop sign. There was minimal traffic at that location and that time of night. West began to follow Duncan. Duncan was traveling approximately ten miles per hour over the speed limit, which West determined by following behind Duncan and "pacing him" using the speedometer in his patrol car. After West observed Duncan twice fail to maintain a single lane of traffic by crossing over a highway line, West

activated the overhead lights on his patrol car. After the lights were activated, Duncan crossed over the highway line one more time but then pulled over in a safe manner.

Upon making contact with Duncan while he was still seated in the driver's seat of the van, West smelled a strong alcoholic-beverage odor on or about Duncan's person and from his breath. West also noticed that Duncan's eyes were red and bloodshot and that he had somewhat slurred speech. Having observed all these things, West asked Duncan to step to the rear of the vehicle so that he could administer field sobriety tests to him.

Just after Duncan exited the van, Deputy Mike Reynolds of the Somervell County Sheriff's Department, West's partner that night, arrived to help. Because the tape in West's in-car camera had run out, Reynolds positioned his patrol car so that his in-car camera could record the traffic stop. Reynolds also took Duncan's driver's license and "ran it through dispatch."

West administered the field sobriety tests. He first administered the horizontal gaze nystagmus (HGN) test to Duncan. West testified that Duncan exhibited all six clues of intoxication, but he admitted he was aware that nystagmus occurs in many people naturally and he had no idea whether it occurs naturally in Duncan's case. West then administered the walk-and-turn test. Based on Duncan's performance, West opined that Duncan was intoxicated. Finally, West had Duncan perform the one-leg stand test, which he also failed. During this time, Reynolds observed that Duncan did not follow directions correctly, he could not stand without swaying, he did not walk the straight line during the walk-and-turn test, and he could not stand on one foot during

the one-leg stand test. West then arrested Duncan for DWI and placed him in his patrol car. West and Reynolds then inventoried the van and found no open containers.

Once at the jail, West took Duncan to the DWI Intoxylizer room. Generally, when someone is brought into the Intoxylizer room, the deputy re-administers the standard field sobriety tests in that "controlled environment," and the performance of the tests is videotaped. Duncan refused to perform the tests in the Intoxylizer room, and no video of Duncan in the Intoxylizer room was located. West then read Duncan the statutory warning form, informing him of the consequences of refusing to allow the taking of a breath or blood specimen, and requested that he provide a blood specimen. Duncan consented to giving a blood specimen. West testified that he opted to ask for a blood specimen because, while on the side of the road, Duncan had already said that he was not going to be willing to give a breath sample.

West then took Duncan to the emergency room of the Glen Rose Medical Center so that Duncan's blood could be drawn. At that time, Duncan signed a consent form, stating that he was voluntarily giving a blood specimen to West. The laboratory technologist then drew Duncan's blood at 9:55 p.m., and West mailed the sealed vial to the DPS Crime Laboratory in Waco, Texas. Duncan was then taken back to the jail and booked.

Approximately one month later, Charles Mott, a chemist with the DPS Crime Laboratory in Waco, tested Duncan's blood. Mott testified that the blood specimen contained 0.17 grams of alcohol per 100 milliliters. Mott also testified that based on his training and experience and the results of the blood test, Duncan was intoxicated at the

time he was driving. The State and Duncan also stipulated that Duncan had two previous DWI convictions.

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PEN. CODE ANN. § 49.04 (Vernon 2003). The offense is enhanced to a third-degree felony if the State can prove that the person has twice before been convicted of any other offense relating to the operating of a motor vehicle while intoxicated. *Id.* § 49.09(b)(2) (Vernon 2003). "Intoxicated" means:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) having an alcohol concentration of 0.08 or more.

*Id.* § 49.01(2) (Vernon 2003). "Alcohol concentration" means, as relevant here, the number of grams of alcohol per 100 milliliters of blood. *Id.* § 49.01(1)(B).

Duncan first argues that the initial traffic stop was unlawful and therefore the evidence of intoxication is factually insufficient, presumably because the fruits of the alleged unlawful stop should have been suppressed. However, Duncan has failed to preserve this complaint about the legality of the stop. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired from the court unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1). In this case, Duncan never filed a motion to suppress, nor does it appear that

he ever made any other objection to the trial court complaining of the legality of the stop. Thus, Duncan failed to preserve this issue for appeal.

Duncan next argues that the test results obtained from his blood specimen should not have been admitted into evidence because the request for the specimen was unauthorized. Duncan also complains that no qualifications were given that would authorize Mott to testify as to his determination of what Duncan's blood alcohol concentration was at the time of his driving based on the results of the blood test. Duncan concludes that his blood alcohol concentration at the time of his driving is thus unsupported by any real evidence or admissible opinion. However, Duncan once again failed to make a proper objection to the admission of this evidence; therefore, he has failed to preserve these complaints for appellate review. *See id.*; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

Finally, Duncan points out several things that were not admitted into evidence (*e.g.*, open containers and a video of his conduct at the jail) and contends that the absence of this evidence "does not support the officers' opinions of intoxication." But despite this alleged absence of some evidence of intoxication, our focus is on the factual sufficiency of the evidence of intoxication that was admitted.

Considering all of the evidence in a neutral light, we conclude that the evidence of intoxication is factually sufficient and the jury was justified in finding Duncan guilty of driving while intoxicated (third offense). We overrule Duncan's sole point and affirm the trial court's judgment.

REX D. DAVIS  
Justice

Before Chief Justice Gray,  
     Justice Reyna, and  
     Justice Davis  
Affirmed  
Opinion delivered and filed July 8, 2009  
Do not publish  
[CR25]