NUMBER 13-10-00644-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

                                                                                                                             

ESTEBAN RUIZ,                                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.                                                                                                                                      

 

On
appeal from the 28th District Court

of Nueces County,
Texas.

                                                                                                                             

OPINION

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Opinion by Justice Garza


 

Appellant, Esteban Ruiz, was
indicted for murder; the trial court found him guilty of the lesser-included
offense of manslaughter,[1]
see Tex. Penal Code Ann. §
19.04 (West 2003), and assessed punishment at twenty years’ imprisonment.  See
id. § 12.33 (West Supp. 2010).  By a single issue, appellant
contends that the evidence is legally insufficient to support his conviction
because the testimony of a jailhouse informant was insufficiently corroborated
by other evidence tending to connect him to the offense.  We affirm.  

I.     
Background

A.   The State’s
Evidence

1.      Richard
South

            Richard South
testified that about an hour before sunrise on the morning of September 30,
2008, he found a female victim’s body, later identified as Kathleen Telge,
along the Oso Bay area in Nueces County, Texas.  South called the police; an
officer arrived about ten minutes later.  

2.     Pete
Garza

            Officer
Pete Garza of the Corpus Christi Police Department testified that he arrived at
the scene about 6:49 a.m. and determined that Telge was deceased.  Officer
Garza concluded that she had been there for “a number of hours.”   

3.     Oscar
Valadez 

            Oscar
Valadez, an inmate, testified that he had a history of convictions and had a
pending forgery charge.  He agreed to testify in exchange for lenient treatment
from the prosecutor.  Valadez had been incarcerated with appellant in the
county jail.  While incarcerated, appellant told Valadez the following:  (1) appellant
had been with “Kat” (Telge) and “Devon” (Herrero) one night and Kat had been
smoking crack cocaine; (2) Kat and Devon met an “old man” at a motel, where they
stole his money in order to purchase more drugs; (3) after the events at the
motel, Kat and Devon were riding in appellant’s truck; (4) Devon asked appellant
to stop the truck, and when he did, she got out and ran; (5) Kat attempted to get
out also, but appellant pulled her back into the truck by her hair, closed the
door, and slammed her head against the window repeatedly; (6) appellant also
hit her and choked her until she stopped breathing; and (7) after driving
around a bit and taking some more drugs, appellant dumped Telge’s body.  

            On
cross-examination, Valadez testified that he had met Telge a few times “out in the
street.”  He also testified that Telge had a significant drug habit and engaged
in prostitution to support her drug habit.  

4.     Dr. Ray
Fernandez

            Ray
Fernandez, M.D., medical examiner for Nueces County, performed an examination
of Telge’s body using a “postmortem sexual assault kit,” by which swabs of
various areas of the body are taken and submitted for laboratory analysis.  Drug
testing was conducted on additional samples by a toxicology lab.  The toxicology
tests showed the presence of cocaine and benzoylecgonine, a breakdown product
of cocaine, in Telge’s blood.  According to Dr. Fernandez, the cause of Telge’s
death was blunt head trauma with a contributory condition of cocaine
intoxication.  Telge sustained two or three blows to her head and abrasions on
the left side of her neck and jaw.  These injuries were consistent with someone
grabbing Telge by the neck or throat and slamming her head against the door of
a vehicle.  Dr. Fernandez conducted his examination of Telge’s body after 9:30
a.m.  Based on the fact that no decomposition had occurred, Dr. Fernandez believed
that Telge’s death had occurred “minutes” or “hours” before she was found.  

            On
cross-examination, relevant to the DNA testing discussed below, Dr. Fernandez testified
that traces of semen can remain detectable in a person’s mouth for up to six hours
after ejaculation.  On redirect examination, Dr. Fernandez testified that
because semen was detectable in Telge’s mouth and her body remained at the
crime scene for approximately three and a half hours before the medical
examination, the time frame for when the semen may have been deposited in her
mouth was “possibly” narrowed to approximately two and a half hours before her
body was discovered. 

5.     Lisa
Harmon Baylor

            Lisa
Harmon Baylor, a forensic scientist for the Texas Department of Public Safety
Crime Laboratory in Corpus Christi, testified that she attempted or conducted DNA
testing on:  (1) three condom wrappers found at the site; (2) samples from the
postmortem sexual assault collection kit from Telge’s body[2], and (3) buccal
swabs obtained from appellant. 

Baylor
testified that:  (1) no DNA profile was obtained from the condom wrappers; (2) oral
swabs from Telge’s mouth contained semen, which were consistent with appellant’s
DNA; and (3) the remaining samples tested contained either only Telge’s DNA or
a “mixture” of DNA belonging to Telge and another unidentified individual that
was not appellant.  Appellant was excluded as a contributor to all the DNA
samples except for the oral swabs.

6.      Tim
Revis

            Tim
Revis, a detective in the Homicide/Robbery Division of the Corpus Christi
Police Department, testified that, based upon his investigation and Telge’s
cell phone records, the last phone call made from Telge’s phone was around 3:25
a.m. the morning she was killed.  Telge talked by phone to an acquaintance, Bridget
Emery, at approximately 3:26 a.m. that morning.  The autopsy findings were not
made public, except that Telge had suffered blunt force trauma to her head.  

            On
cross-examination, Detective Revis testified that during his investigation, he
learned that Telge’s live-in boyfriend, Timothy Packert, had been with her
until around 2:00 or 3:00 a.m. the morning she died.  Two other individuals,
Lincoln McAfee and Antonio Alamo, were with Telge and Packert at their
apartment until around 2:00, when Telge left the apartment.  The investigation
revealed that Packert had previously been arrested for assaulting Telge.  

            On
re-direct examination, Detective Revis said that, after obtaining statements
from McAfee and Alamo and speaking to Emery, he eliminated Packert as a suspect
because Packert had not seen Telge after she left the apartment around 2:00
a.m.  He also ruled out McAfee and Alamo as suspects, apparently because their
stories were consistent and they did not see Telge after 2:00 a.m.  

            After
the State rested,[3]
the trial court allowed the State to reopen for the limited purpose of
recalling Detective Revis.  Detective Revis testified that in February 2009,
approximately six months after Telge’s death, he became aware that Devon
Herrero was a potential witness.  Detective Revis testified that he did not
attempt to contact Herrero because she was deceased and that appellant pleaded
guilty to her murder.  Detective Revis also stated, on cross-examination, that
Telge had previously filed a report complaining that Packert had struck her.  According
to Telge’s family, Packert left town after Telge’s death. 

            Appellant
presented no witnesses.  After appellant elected to have the trial court
determine the issue of guilt or innocence, the trial court found appellant
guilty of the lesser-included offense of manslaughter and sentenced him to
twenty years’ imprisonment.  This appeal followed. 

II.  Corroboration
of Jailhouse Informant Testimony

A.    Standard of
Review and Applicable Law

Article 38.075 of the Texas Code of
Criminal Procedure provides:  

(a)  A defendant
may not be convicted of an offense on the testimony of a person to whom the
defendant made a statement against the defendant's interest during a time when
the person was imprisoned or confined in the same correctional facility as the
defendant unless the testimony is corroborated by other evidence tending to
connect the defendant with the offense committed. In this subsection,
"correctional facility" has the meaning assigned by Section 1.07,
Penal Code.

 

(b)
Corroboration is not sufficient for the purposes of this article
if the corroboration only shows that the offense was committed.

Tex. Code Crim. Proc. Ann. art. 38.075
(West Supp. 2010). [4]

Thus, Valadez’s
testimony—concerning what appellant told him regarding his involvement in
Telge’s death while both were incarcerated—requires corroboration.             The
Texas Court of Criminal Appeals has not determined what standard is required
for corroboration of jailhouse informant testimony beyond the language of the
statute itself.  See id.  However, one of our sister courts has held that the
standard required for corroboration of jailhouse informant testimony under
article 38.075 is the same as that required for corroboration of accomplice
witness testimony under article 38.14 of the Texas Code of Criminal Procedure.[5]  Watkins v. State, 333 S.W.3d 771, 778 (Tex. App.—Waco 2010, pet. ref'd).  The Watkins
court noted that “[a]rticle 38.075 was enacted in recognition that incarcerated
individuals have an incentive to provide information against other incarcerated
individuals and that this testimony should be corroborated.”  Id. (citing
Senate Comm. on Criminal Justice, Bill Analysis,
Tex. S.B. 1681, 81st Leg., R.S. (2009)).  We find the reasoning of the Waco Court
persuasive and conclude that the standard for corroboration of jailhouse
informant testimony under article 38.075 is the same as the standard for
corroboration of accomplice-witness testimony under article 38.14. 

In Smith v. State, the court
of criminal appeals recently restated the standard for reviewing the
sufficiency of non-accomplice evidence under article 38.14.  332 S.W.3d 425,
442 (Tex. Crim. App. 2011).  By substituting “jailhouse informant” for
“accomplice,” we conclude that the standard for reviewing sufficiency of
non-jailhouse informant evidence under article 38.075 is as follows:  

When
reviewing the sufficiency of non-[jailhouse informant] evidence under Article
38.14, we decide whether the inculpatory evidence tends to connect the accused
to the commission of the offense.  The sufficiency of non-[jailhouse informant]
evidence is judged according to the particular facts and circumstances of each
case.  The direct or circumstantial non-[jailhouse informant] evidence is
sufficient corroboration if it shows that rational jurors could have found that
it sufficiently tended to connect the accused to the offense.  So when there
are conflicting views of the evidence—one that tends to connect the accused to
the offense and one that does not—we will defer to the factfinder's resolution
of the evidence.  Therefore, it is not appropriate for appellate courts to
independently construe the non-[jailhouse informant] evidence. . . .
[R]eviewing courts [are required] to consider the combined force of all of the
non-[jailhouse informant] evidence that tends to connect the accused to the
offense.

 

Id.  (footnotes
omitted).  “‘[P]roof that the accused was at or near the scene of the crime at
or about the time of its commission, when coupled with other suspicious
circumstances, may tend to connect the accused to the crime so as to furnish
sufficient corroboration to support a conviction.’”  Id. at 443 (quoting
Richardson v. State, 879 S.W.2d 874, 880 (Tex. Crim. App. (1993)).  Moreover,
a defendant’s behavior or actions prior to or following an offense may tend to connect
the defendant with the commission of the offense.  Id. at 445.  To
evaluate the sufficiency of corroboration evidence, we must eliminate all of
the accomplice/jailhouse-informant testimony from consideration and then
examine the remaining portions of the record to see if there is any evidence
that tends to connect the accused with the commission of the crime.  Castillo
v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (applying article
38.14).  

B.    Discussion 

            Here, the State
relied on the following non-jailhouse informant evidence:  (1) the presence of appellant’s
semen in Telge’s mouth, which suggested that appellant was alone with Telge close
to the time of her death, see Smith, 332 S.W.3d at 443; (2) the details
of Telge’s injuries—which were not released to the media—were consistent with
Valadez’s testimony describing how appellant said he killed Telge, see
Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (holding extraneous
offense evidence corroborated defendant’s confession to jailhouse informant by
detailing the manner in which crimes were committed where jailhouse informant
could only have obtained information from the defendant); and (3) Revis
testified that Herrero was a potential witness and appellant pleaded guilty to
murdering Herrero.  See Ransom v. State, 920 S.W.2d 288, 299.
(Tex. Crim. App. 1996) (en banc) (op. on reh'g) (holding attempts to tamper
with a witness, and any criminal act designed to reduce the likelihood of
prosecution, constitutes evidence of “consciousness of guilt” on the part of
the defendant).  After eliminating Valadez’s testimony from our consideration
and conducting an examination of all of the non-jailhouse informant evidence
that tends to connect appellant to the offense, we conclude that the evidence
is sufficient to tend to connect appellant to the offense for which he was
convicted.  See Smith, 332 S.W.3d at 442.  Therefore, having
concluded that the testimony of Valadez, a jailhouse informant, was
sufficiently corroborated by other evidence tending to connect appellant to the
offense, we overrule appellant’s sole issue.  

III.       Conclusion

We affirm the trial court’s judgment.

 

DORI CONTRERAS GARZA

                                                                                                Justice

Publish.

Tex.
R. App. P. 47.2(b).

Delivered and filed the 

4th day of August, 2011.

 









            [1]
The case was tried before a jury.  After the close of the evidence, however,
against the advice of his counsel, appellant elected to waive a jury trial and
have the trial court decide his guilt or innocence.





            [2]
The sexual assault evidence collection kit included:  (1) a known blood sample;
(2) vaginal swabs and smears; (3) oral swabs and smears; (4) rectal swabs and
smears; (5) left and right neck swabs; (6) left and right breast swabs; (7)
pulled head hairs; (8) pubic hair combing; (9) a single hair from right bra
cup; (10) fingernail clippings from both hands; and (11) a pair of panties.





            [3]
Outside the presence of the jury, the trial court heard arguments from counsel
regarding whether the State should be permitted to introduce evidence that
appellant had pleaded guilty to murdering Devon Herrero.  The State argued that
the evidence should be admitted because, among other reasons, it showed
appellant’s “consciousness of guilt.”

 





            [4]
Article 38.075 “applies to any case in which a judgment has not been entered
before the effective date [Sept. 1, 2009] of this Act.”  See Act of May
20, 2009, 81st Leg., R.S., ch. 1422 § 2, 2009 Tex. Sess. Law Serv. 4478
(West).  The judgment in this case was entered November 4, 2010.  Thus, article
38.075 applies in this case.  





            [5]
Article 38.14 provides that “[a] conviction cannot be had upon the testimony of
an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.  Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).