**Bobby Charles LONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–05–01152–CR, 01–05–01178–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 4, 2007.

---

Kevin D. Fine, Schneider & McKinney, P.C., Houston, Lee D. Cox, Richmond, for appellant.

Kristen Moore, Asst. Dist. Atty., John F. Healey, Jr., Fort Bend County Dist. Atty's Office, Richmond, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Bobby Charles Long, appeals from state jail felony convictions for fraudulent use of identifying information[1] and credit card abuse.[2] *See* TEX. PEN.CODE ANN. §§ 32.31, 32.51 (Vernon Supp.2006). Appellant pleaded not guilty to both counts and not true to the punishment enhancement paragraphs that asserted prior convictions for credit card abuse and tampering with a government record. The jury found appellant guilty of both offenses. The trial court found true both punishment

---

1. Count I in Trial Court Cause Number 38774A, which is appellate number 01–05–01152–CR.

2. Count II in Trial Court Cause Number 38774A, which is appellate number 01–05–01178–CR.

enhancement paragraphs and sentenced appellant to 14 years' confinement in prison for each count, to run concurrently. In four issues, appellant contends that (1) the evidence does not sufficiently corroborate accomplice witness testimony, (2) the evidence is legally insufficient, (3) the evidence is factually insufficient, and (4) the trial court erred by "partially overruling [his] motion in limine" and overruling a challenge for cause. We conclude that the evidence is legally and factually sufficient, the trial court's ruling on the motion in limine was not reversible error, and appellant failed to preserve error regarding the denial of his challenge for cause. We affirm.

## Background

Complainant Lisa Creson, an attorney, previously worked in private practice with Barbara Hudson, whose legal assistant was Penny Cooper. The three developed a friendship. Around late summer 2001, Cooper, a single mother of three, confided to Creson that she was nervous about affording school clothing for her children. Creson offered the use of her Dillard's credit card to Cooper, who had no credit. Cooper kept up with the payments for the purchases of the school clothes, but ran a balance on the Dillard's card.

Creson also assisted Cooper when Cooper rented a car by giving the car rental company Creson's MasterCard as security for the rental. Creson usually went with Cooper to give the MasterCard to the car rental company. Cooper did not keep the MasterCard and paid the rental charges in cash.

When a $100 charge showed up from Cooper's use of the MasterCard in connection with a car rental, Cooper called MasterCard to ask about that charge. During the call, Cooper learned of an offer from MasterCard to transfer another credit card's balance to the MasterCard for a lower interest rate. In order to complete the transfer, Cooper needed Creson's social security number and her mother's maiden name. Creson faxed Cooper a copy of her MasterCard with the card number written below the image of the card. Creson also gave Cooper her address, birth date, social security number, and her mother's maiden name, over the telephone. Creson's mother had not gone by her maiden name for approximately 51 years. Cooper wrote the information on the piece of paper with the faxed copy of Creson's MasterCard.

During this same period of time, Cooper dated appellant, who was regularly at Cooper's house. Cooper said that appellant had access to the piece of paper that had Creson's MasterCard information and identification information, which he could have copied or faxed with Cooper's copier or fax machine.

Appellant was in the midst of starting up an ambulance business, Odyssey EMS. Cooper gave Creson several of appellant's business cards for Odyssey EMS to pass out to her mother and her mother's elderly neighbors in case they might need an ambulance. Creson received a telephone call in September 2003 from Rudy Kircher regarding an office space lease for Odyssey EMS bearing the signature of a person named "Lisa" but with Creson's mother's maiden name as the last name. He asked Creson to "make the check good"; Creson, however, had no idea what Kircher meant. Creson realized from Kircher's description that the person who had signed the lease was Penny Cooper. Creson cancelled both the MasterCard and Dillard's card, and contacted the police. Creson's MasterCard statement for September 2003 revealed approximately $10,000 in unauthorized charges, which

turned out to be related to the ambulance business.

Cooper denied that she filled out the lease application form about which Kircher called Creson. Kircher explained that he faxed the application to appellant, who first submitted a name that did not have sufficient credit for the lease. Kircher then faxed appellant a new form, which was returned with the name and signature of a fictitious name ending in Creson's mother's maiden name, along with Creson's social security number. Kircher presumed appellant or someone at appellant's office returned the new lease form with the fictitious name on it.

Cooper said that appellant called her to sign the lease in the place of someone who could not make the signing. When she arrived at the place to sign the lease, Cooper saw the fictitious name. She nonetheless signed that name on the documents, knowing she was "doing wrong." Cooper said she was not sure at the time what the source of the name was, though it sounded familiar. She later admitted that she knew she was fraudulently using the name when she signed the lease.

Detective Mutchler of the Stafford Police Department testified that he became suspicious during his investigation that the $10,000 in unauthorized charges that Creson reported may have come from appellant. At appellant's business, Mutchler found a piece of paper with Creson's name, address, social security number, and mother's maiden name.

According to Creson's MasterCard statement, all the charges occurred between August 25 and September 4, 2003. Mike Wetzel, owner of Lone Star Emergency Vehicle Services, testified that appellant used Creson's MasterCard information over the phone to pay for a series of repairs on a used ambulance purchased by Odyssey EMS. He said that appellant

told him the card belonged to his girlfriend, identifying her by the fictitious name. Cooper and appellant were later arrested for fraudulent use of identifying information.

Appellant gave an oral statement to a police officer after his arrest. In his statement, appellant denied knowing the person whose name was signed to the lease. Appellant stated that Creson had faxed the piece of paper with her information knowing it would be used in his business, and that he was informed through Cooper that Creson had permitted this use of the credit card for the business. Appellant further contended that Cooper had free use of Creson's credit cards, "some of which [Cooper] still has."

At trial, appellant filed a motion for the court to allow him to testify free from impeachment, which the court granted in part and denied in part. At the hearing, appellant asserted that the State intended to impeach him with prior convictions. The State agreed not to mention appellant's 1993 conviction for misrepresentation of certification as an Emergency Medical Technician (EMT). The trial court ruled that the State could not impeach appellant's testimony with his convictions for burglary of a building in 1993 and carrying a weapon on school premises in 1986. However, the trial court ruled that it would allow the State to impeach appellant with a prior conviction for credit card abuse, and a prior conviction for tampering with a government record, for which appellant was still on parole at the time of this trial.

Cooper pleaded guilty to fraudulent use of identifying information and received three years' probation. Cooper testified against appellant at his trial, denying that she had allowed him to use Creson's credit cards or information. Cooper also said

appellant tried to convince her to tell police that she misled him. Cooper further testified that the prosecutor in the current case had not "made any sorts of deals" with her, and that no one in the district attorney's office did anything to influence her testimony.

Appellant's business partners, Basil Abdullah and James Henry, testified that appellant told them that Cooper's aunt agreed to help financially with the business. Abdullah said that during a phone call, appellant said he was at this aunt's house, discussing her investment in the business. Henry also testified that appellant said that a person, who he referred to by Creson's mother's maiden name, agreed to co-sign the office space lease. Abdullah said appellant told him Cooper was permitted to sign the lease on behalf of "Aunt Lisa," who was out of town.

### Sufficiency of Evidence

In his first and second issues, appellant contends that the evidence is legally and factually insufficient to support his conviction because the State failed to corroborate the accomplice-witness testimony of Cooper.

### A. Law Requires Proof of Lack of Consent

To establish the offense of credit card abuse, the State had to prove beyond a reasonable doubt that appellant, with the intent to obtain a benefit fraudulently, presented or used Creson's credit card with knowledge that the card was not issued to him and was used without the effective consent of the cardholder. *See* TEX. PEN. CODE ANN. § 32.31(b)(1) (Vernon Supp. 2006). Similarly, to establish the offense of fraudulent use of identifying information, the State had to prove beyond a reasonable doubt that appellant obtained, possessed, transferred, or used Creson's identifying information without her con-

sent and with intent to harm or defraud another. *See id.* § 32.51(b) (Vernon Supp. 2006).

For both offenses, appellant challenges only the State's proof of lack of consent. Specifically, appellant contends that Cooper and Creson gave him consent to use the credit card and identification information, and that he formed a reasonable belief that he had their consent. *See id.* § 8.02 (Vernon Supp.2006).

### B. Sufficiency of Non–Accomplice Testimony

Cooper testified against appellant by stating that he did not have consent. Cooper is an accomplice as a matter of law, as she was indicted and pleaded guilty to the charge of fraudulent use of identifying information, which arose from the same set of facts as appellant's charges. *See Cocke v. State,* 201 S.W.3d 744, 747–48 (Tex. Crim.App.2006) (citing *DeBlanc v. State,* 799 S.W.2d 701, 708 (Tex.Crim.App.1990)).

A conviction cannot be had on the testimony of an accomplice unless corroborated by other evidence that tends to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon Supp.2006). In assessing the sufficiency of corroborative evidence, we eliminate the testimony of the accomplice witness from consideration and examine the testimony of other witnesses to ascertain whether the non-accomplice evidence tends to connect the accused with the commission of the offense. *Castillo v. State,* 221 S.W.3d 689, 691 (Tex.Crim.App. 2007). The non-accomplice evidence need not be sufficient itself to establish the accused's guilt beyond a reasonable doubt. *Id.* All the law requires is that some non-accomplice evidence tends to connect the

accused to the commission of the offense. *Id.*

▮ Excluding the testimony by Cooper, the accomplice, other evidence tends to connect the accused to the commission of both offenses. *See id.* at 693. Creson testified that she did not consent to give appellant use of her credit card or information, nor did she give him any information. Additionally, the circumstantial evidence suggests appellant was unfamiliar with Creson. The piece of paper containing Creson's credit card number and full identifying information, including her mother's maiden name, her birth date, and her address, was found at appellant's business. The information is written in such a way as to likely make one who knows nothing of her and who looks at the paper for the first time to think that her name is the fictitious name. The lease signature uses this name. But the second name on the paper was not Lisa's last name; rather, it was her mother's maiden name. The use of her mother's maiden name on the lease suggests that whoever caused the name to be put on the original lease application likely did not know Creson.

Contradictions in appellant's representations to others also indicate that he was aware of Creson's lack of consent to use the credit card. Appellant told his business partners that "Aunt Lisa" allowed him to use the credit card for the business. In another version about who Lisa was, appellant told Wetzel that the credit card he used to pay for ambulance repairs belonged to his girlfriend, Lisa [maiden name]. In conflict with each of these versions, appellant told a police officer that he had no idea who Lisa [maiden name] was. Appellant also contended that he was deceived into believing that he had Creson's effective consent to use the credit card. Appellant's inconsistent explanations for using the credit card are circumstances that also show he knew he lacked consent to use the card.

Having reviewed the circumstances of the offense and the evidence from the non-accomplices, we conclude that sufficient non-accomplice evidence tends to connect appellant to the commission of the offense, under article 38.14. *See* TEX.CODE CRIM. PROC. ANN. art. 38.14; *Castillo,* 221 S.W.3d at 691.

**C. Legal Sufficiency of the Evidence**

▮ Appellant further contends that the evidence is legally insufficient to establish his knowledge of lack of consent for both credit card abuse and fraudulent use of identifying information. As we have recently noted, a challenge of insufficient evidence to support the verdict is not the same as a challenge of insufficient corroboration. *Utomi v. State,* 243 S.W.3d 75, 79 (Tex.App.-Houston [1st Dist.] 2007, pet. filed) (citing *Cathey v. State,* 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999)). When, as here, we are asked to review the legal sufficiency of the evidence, we review *all* the evidence in the light most favorable to the judgment to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000)). We do not eliminate the testimony of an accomplice when analyzing the legal sufficiency of the evidence as a whole. *Id.* at 79 (citing *Smith v. State,* No. 2–04–120–CR, 2005 WL 852144, at *5 (Tex.App.-Fort Worth Apr. 14, 2005, pet. ref'd) (not designated for publication)) ("[W]hen reviewing the legal and factual sufficiency of the evidence, we consider all of the evidence, including accomplice-witness testimony."); *see also Simmons v. State,* 205 S.W.3d 65, 72 (Tex.App.-Fort Worth 2006, no pet.). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give their testimony. *Mar-*

*graves v. State,* 34 S.W.3d 912, 919 (Tex. Crim.App.2000). A jury is entitled to accept one version of the facts and reject another, or reject any part of a witness's testimony. *Id.*

Viewing the evidence in the light most favorable to the jury's verdict, the evidence shows that Cooper, the accomplice, stated that she did not give appellant permission to use Creson's credit card. Creson also denied giving appellant consent. A rational jury could have found beyond a reasonable doubt that appellant was aware that he did not have consent to use the credit card and identifying information. *See King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). We hold the evidence is legally sufficient to establish appellant's guilt for credit card abuse and fraudulent use of identifying information.

We overrule appellant's first issue.

### D. Factual Sufficiency of the Evidence

In his second issue, appellant contends that the evidence is factually insufficient to establish his knowledge of lack of consent in both charges. Appellant contends that "[e]very statement made by the [appellant] to his partners and to law enforcement indicated that he believed that he had permission to use the identifying information and the credit card."

As with a challenge to the legal sufficiency of the evidence, we view *all* the evidence in a factual sufficiency review, including accomplice-witness testimony. *See Utomi,* 243 S.W.3d at 79 (citing *Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim.App. 1999)). We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *King,* 29 S.W.3d at 562. The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility

and demeanor. *Marshall v. State,* 210 S.W.3d 618, 626 (Tex.Crim.App.2006).

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Ladd,* 3 S.W.3d at 557. We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim. App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To show that he had a reasonable belief he had consent to use the credit card, appellant points to his statements about his use of the credit card. The record shows, however, that appellant made contradictory statements by telling his business partners that Cooper's Aunt Lisa allowed him to use the credit card and information as her investment in the business. Appellant told Wetzel, from

whom he purchased ambulance repairs, another version about the credit card by telling him that it belonged to appellant's girlfriend, Lisa [maiden name]. Detective Mutchler received yet another version that Cooper told appellant that she obtained permission from Creson to use the credit card in their business. While Creson admitted that Cooper gave her appellant's Odyssey EMS business cards, she said the only reason was so that she could hand them out to her mother and her mother's elderly neighbors, in case they needed an ambulance.

Appellant further contends that the inferences from circumstantial evidence support his assertions. He only used the credit card for business-related items, and made no effort to conceal his use of the card. Appellant asserts that, had he truly believed that he did not have consent to use the card, he would not have been so open about its use. Cooper's testimony that appellant tried to get her to take the blame for his actions, however, could indicate that appellant knew his actions were wrong, and that he planned to try to escape liability by using Cooper as his witness. Furthermore, nothing in the record indicates that appellant knew Creson's proper name until confronted by Detective Mutchler, which was consistent with the way in which Creson's information was written on the piece of paper found in appellant's office, stating "Lisa Creson [maiden name]." The misuse of the name indicates that appellant had not been granted the informed permission he claimed to have received from Cooper or Creson.

Although appellant's testimony and his lack of concealment in his use of the card and information could show that he believed he had consent from Cooper and Creson, that testimony is impeached by appellant's various other statements about why he had the credit card and information; by testimony from Cooper and Creson that they did not give him or Cooper consent to use the card or information; and by circumstantial evidence that the person who used the card did not know that her mother's maiden name was not Creson's last name.

In support of his contention of factual insufficiency of the evidence, appellant relies on *Vodochodsky v. State*, 158 S.W.3d 502 (Tex.Crim.App.2005). In *Vodochodsky*, the defendant was convicted of capital murder based on his assistance with his roommate's plan to lure police officers to his home and kill them. *Id.* The Court of Criminal Appeals held that the evidence, which involved the defendant's admissions to third parties, was factually insufficient to support the conviction because none of the evidence tending to prove the defendant's guilt indicated that he acted with intent to promote or assist his roommate in the killings, and that his statements were devoid of information on the details of the alleged murder plot. *Id.* at 510–11. Here, however, appellant's statements to others were deceptive and inconsistent and thus the jury could reasonably construe them as an indication of appellant's guilt.

We conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, and that the verdict is not against the great weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d at 11. We hold that the evidence is factually sufficient to establish appellant's guilt for credit card abuse and fraudulent use of identifying information.

We overrule appellant's second issue.

### Motion to Testify Free From Impeachment

In his third issue, appellant contends that the trial court erred by denying his pretrial "motion in limine" that sought to

prevent impeachment of appellant with his past convictions for (1) credit card abuse and (2) tampering with a government document.[3] To exclude the State's use of these prior convictions for impeachment of appellant's testimony at trial, appellant filed a motion to exclude evidence, in addition to a motion in limine; appellant appears to use these terms interchangeably. The trial court denied these motions, ruling that if appellant testified, the State could impeach him with his prior convictions for credit card abuse and tampering with a government document.[4] Appellant did not testify and the State never used the prior convictions during the guilt-innocence phase of trial. Appellant never told the trial court that he was not testifying due to its ruling to allow impeachment with these prior convictions. On appeal, however, appellant claims he did not testify due to the trial court's ruling to allow impeachment with the prior convictions.

■■■ To preserve error from a trial court's pretrial ruling to allow impeachment of an appellant's testimony with prior convictions, an appellant must testify, because without the testimony, a harm analysis cannot be conducted. *See Morgan v.*

State, 891 S.W.2d 733, 735 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) ("specifically [holding] that a defendant must testify in order to raise and preserve a claim of improper impeachment through prior convictions"). Here, as in *Morgan,* the disputed motion is not a motion in limine, but rather a pre-trial motion to testify free of impeachment on which the court ruled. *See id.* at 734–735. In *Morgan,* we adopted the reasoning of the United States Supreme Court in its ruling in *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), wherein the Court held that the federal corollary to Texas Rule of Evidence 609 requires that a defendant testify in order to preserve a pretrial ruling on the admissibility of prior conviction impeachment evidence.[5] *See Morgan,* 891 S.W.2d at 735 ("The reasoning of *Luce* is persuasive."). The *Morgan* court summarized *Luce's* reasoning, which turned on the difficulty of appellate review based upon testimony that never took place:

> The court in *Luce* was most concerned with the fact that a reviewing court cannot weigh the probative value against

**3.** Appellant states in his brief that his motion was also denied regarding burglary of a building, but the record indicates that the motion was granted when the court ruled on it the first day of trial, after both the State and appellant were able to perform further research on the matter. Appellant also offers no arguments regarding this offense, nor does he explicitly contest it.

**4.** As to the charge of credit card abuse, appellant asserts that (1) more than ten years have elapsed since either conviction of the offense or release from confinement, and (2) the probative value of the offense is not supported by specific facts and circumstances to substantially outweigh its prejudicial effect, as required by Rule 609. *See* Tex.R. Evid. 609(b). As to the charge of tampering with a government document, appellant contends that application of the factors enumerated in *Theus*

*v. State,* 845 S.W.2d 874 (Tex.Crim.App.1992), indicate that the probative value of evidence of the conviction does not outweigh its prejudicial effect.

**5.** The Supreme Court in *Luce* used the term *in limine* "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). We note that the Court of Criminal Appeals has held that "[f]or error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during the trial." *Gonzales v. State,* 685 S.W.2d 47, 50–51 (Tex.Crim.App.1985) (citing *Thomas v. State,* 477 S.W.2d 881 (Tex.Crim.App.1972)).

the prejudicial effect without a factual record of the defendant's testimony. In contrast, if a defendant testifies and is impeached, the reviewing court can examine the defendant's testimony, the prosecutor's cross-examination, and the jury arguments to determine the impact of the impeachment. The court in *Luce* was also concerned that the alleged harm would be speculative, because the trial court would be free to change her previous ruling and prohibit the impeachment. Alternatively, the prosecutor might decide not to use an arguably inadmissible prior conviction. Finally, even assuming that these difficulties could be overcome, the reviewing court would be unable to conduct a harmless error analysis if it determined that the prior convictions had been improperly admitted, because the error would always be harmful if it presumptively prevented the defendant from testifying in his own defense.

*Morgan*, 891 S.W.2d at 735 (discussing *Luce*) (citations omitted).

We have since several times affirmed the general rule that a defendant must testify to preserve error on a claim of improper impeachment through prior convictions. *See, e.g., Leal v. State*, 2006 WL 1275909, at *3 (Tex.App.-Houston [1st Dist.] Oct. 4, 2006, pet. ref'd) (mem. op., not designated for publication) ("because he did not testify, appellant waived any complaints about the trial court's in limine rulings regarding the use of his prior, probated felony conviction for impeachment

purposes"); *Clark v. State*, 1998 WL 47819, at *2 (Tex.App.-Houston [1st Dist.] Jan. 22, 1998, pet. ref'd) (not designated for publication) ("because appellant did not testify, he did not preserve his claim of improper impeachment through his prior convictions").[6]

■ Both appellant and the State build a case for the merits of granting and denying, respectively, the motions in limine based upon the *Theus* factors for weighing probative versus prejudicial value of evidence of convictions. However, without the defendant's testimony, we cannot sufficiently review for error. *See Luce*, 469 U.S. at 41–42, 105 S.Ct. at 463. Because appellant did not testify at trial, he failed to preserve error regarding his pretrial motion to testify free from impeachment. *See Morgan*, 891 S.W.2d at 735.

We overrule appellant's third issue.

### Denial of Challenge for Cause

■ In his fourth issue, appellant contends that the trial court erred in overruling the defense challenge for cause of Juror Number Six. The Court of Criminal Appeals has set out the requirements for preserving error on a trial court's allegedly erroneous denial of a challenge for cause:

- The voir dire "of the individual veni-reperson" must be recorded and transcribed;
- The appellant must assert "a clear and specific challenge for cause clearly articulating the grounds therefor";

---

**6.** Though the Court of Criminal Appeals has not addressed this issue specifically, it has positively cited *Luce* in applying it by analogy to its ability to review the exclusion of psychiatric expert testimony when appellant refused to submit to State psychiatric examination pursuant to *Lagrone v. State*, 942 S.W.2d 602 (Tex.Crim.App.1997). *See Saldano v. State*, 232 S.W.3d 77, 88–91 (Tex.Crim.App.2007)

("In order to be entitled to appellate review of the trial court's ruling not limiting a *Lagrone* examination to rebutting any testimony that [his psychiatrist] might have provided on appellant's mental decline, we decide that appellant was required to submit to the *Lagrone* examination and suffer any actual use by the State of the results of this examination.")

- After the challenge for cause is denied by the trial court, appellant must use a peremptory strike on that juror;
- All peremptory challenges must be exhausted;
- When all peremptory challenges are spent, appellant must request additional peremptory challenges; and
- The appellant must assert that an objectionable juror sat on the case.

*See Jacobs v. State,* 787 S.W.2d 397, 405 (Tex.Crim.App.1990); *see also Johnson v. State,* 982 S.W.2d 403, 405 (Tex.Crim.App. 1998) (citing *Jacobs* and noting that appellant "took the necessary steps to preserve any error for appellate review"). Appellant did not use a peremptory strike on Juror Number Six, nor did he request additional strikes. Therefore, appellant's challenge is not preserved.

We overrule appellant's fourth issue.

### Conclusion

We affirm the trial court's judgment.