Affirmed and Memorandum Opinion filed September 24,
2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-08-00174-CR

____________

 

LATOYA FULTCHER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No.  1125543

 



 

M E M O R A N D U M   O P I N I O N

Latoya Fultcher, the appellant, was
convicted of fraudulent use or possession of identifying information and
sentenced to nine years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.  Fultcher appeals her conviction
contending that (1) the trial court abused its discretion by admitting into
evidence an unredacted photo of Fultcher; (2) the State failed to meet its
burden to adequately corroborate accomplice-witness testimony; (3) the evidence
at trial is legally insufficient to support her conviction; and (4) the
evidence is factually insufficient to support her conviction.  We affirm.








I

On January 6, 2007, Harris County District
Attorney=s Office
Investigator Calvin Johnson was working undercover, investigating information
that a local businessCTejas Hi-TekCwas producing fake
identification cards that could be used with stolen checks and credit cards. 
Working with a team of investigators, Johnson and undercover officer Elizabeth
Mihalco of the Houston Police Department went to Tejas Hi-Tek to purchase
identification cards to match three different credit cards specially supplied
for use in fraud investigations. 

 Johnson and Mihalco entered the small
one-room shop and approached a clerk, Izdell Jaime, standing behind a counter. 
On the counter, Jaime had a lap-top computer and a scanner.  Behind the counter
was a computer printer.  Johnson testified that he told Jaime he wanted an
identification card created for each credit card.  Jaime then gave Johnson
three small slips of paper to fill out.  These slips of paper asked for the
name, address, date of birth, and other identifiers Athat normally go
on a driver=s license or on an identification card.@  Johnson filled
out the slips using three different names, none of which were his own.  Jaime
then used a digital camera to take Johnson=s photo as he
stood against a blue drape, similar to the blue background used in Texas
Department of Public Safety driver=s license photos. 
According to Johnson, Jaime told him that this would be the only time he would
need to have his photo taken.  She said that his photo would be saved in a computer
file so that he could come back and use it again.  Johnson was never asked to
verify his actual identity.








While Johnson was waiting for Jaime to
make his identification cards, four women entered the shop.  At trial, Johnson
identified Fultcher as being among the four women.  According to Johnson, A[I]t was obvious
that [Jaime] recognized them as previous customers of the business.@  Johnson
testified that all four of the women Ahad some form of
paperwork in their hands.@  Johnson could see that at least two of
the women had forms from PublicData.com, which the record reflects is a web-based business that makes
personal information such as name, address, date of birth and certain
government-issued identification numbers available for a fee.[1]  Johnson watched
as each of the four women filled out the small slips of paperCusing information
taken from the papers that each had brought with themCand then gave the
completed paperwork to Jaime.  Johnson said that this activity indicated to him
that the women were seeking to obtain fake identification cards for the names
on the PublicData.com forms.  Johnson further testified that Jaime asked them
if they wanted  to use the same photos as Alast time,@ which indicated
to him that the women were repeat customers with photos on file.

After the women completed filling out
their forms, they left the shop and climbed into a white Lincoln Navigator
parked outside.  It appeared to Johnson that the women intended to wait inside
the Navigator until their cards were ready.  A short while later, Jaime told
Johnson that his cards were ready.  Johnson paid for the cards, and then
received them from Jaime.  Johnson exited the shop and gave the pre-arranged
signal to the investigation team.  The team moved in and arrested Jaime, the
shop owner, and the four occupants of the Navigator including Fultcher.  The
team also photographed the crime scene and seized evidence.  

Fultcher was indicted for fraudulent use
or possession of identifying information, tried by a jury, and convicted.  She
was then sentenced to nine years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  This
appeal followed. 

II








Fultcher appeals her conviction contending
that (1) the trial court abused its discretion by admitting into evidence an
unredacted photo of Fultcher; (2) the State failed to meet its burden to
adequately corroborate accomplice-witness testimony; (3) the evidence at trial
is legally insufficient to support her conviction; and (4) the evidence is
factually insufficient to support her conviction.  

A

In her second issue on appeal, Fultcher
contends that the State failed to meet its burden under article 38.14 of the
Texas Code of Criminal Procedure to adequately corroborate accomplice-witness
testimony.  Specifically, Fultcher asserts that the State=s case relied
substantially on testimony from Rochell Jackson, an accomplice in the charged
offense, but that the State failed to sufficiently corroborate Jackson=s testimony as
Texas law requires.  The State responds that testimony from other witnesses as
well as physical evidence corroborates Jackson=s testimony.    








The accomplice‑witness rule provides
that a conviction cannot stand solely on the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.  Tex. Code of Crim. Proc. Ann. art. 38.14
(Vernon 2005); Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App.
2001).  When evaluating the sufficiency of corroboration evidence under the
accomplice‑witness rule, we A>eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the accused
with the commission of the crime.=@  Malone v.
State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting Solomon,
49 S.W.3d at 361).  To meet the requirements of the rule, the corroboration
evidence need not prove the defendant=s guilt beyond a
reasonable doubt by itself.  Id.  Rather, the evidence must simply link
the accused in some way to the commission of the crime and show that A>rational jurors
could conclude that this evidence sufficiently tended to connect [the accused] to
the offense.=@  Id. (quoting Hernandez v.
State, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)).  There is no set amount
of non‑accomplice corroboration evidence that is required for sufficiency
purposes; A>[e]ach case must be judged on its
own facts.=@ Id. (quoting  Gill v. State,
873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).  A>[P]roof that the
accused was at or near the scene of the crime at or about the time of its
commission, when coupled with other suspicious circumstances, may tend to
connect the accused to the crime so as to furnish sufficient corroboration to
support a conviction.=@  Id.
(quoting Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). 
But A>mere presence
alone of a defendant at the scene of a crime is insufficient to corroborate
accomplice testimony.=@  Id.
(quoting Golden v. State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)). 
The accomplice‑witness rule is a statutory creation, and is not based
upon federal or state constitutional notions of sufficiency; there simply needs
to be Aother@ evidence tending
to connect the defendant to the offense.  Id.   

At trial, the State presented evidence
that established the  process by which someone could obtain fake identification
cards at Tejas Hi-Tek.  Johnson testified that these cards likely would be
sufficient to enable  persons to cash checks and use credit cards belonging to
other people.  Johnson also testified that he personally witnessed that
Fultcher was among the group of women who entered the shop, that each woman
carried paperwork into the shop with her, and that each woman used the
paperwork she brought with her to fill out the Tejas Hi-Tek information
sheets.  Further, Johnson testified that it was Aobvious@ to him that Jaime
recognized the four women as prior customers.  Not only did Jaime=s demeanor
indicate that she was familiar with the women, she also asked them if they
wanted to use the same photos they had used before.








The State also offered testimony from
Steve Januhowski, another investigator participating in the operation. 
Januhowski testified that after Fultcher, Jaime, and the others were arrested,
he seized the shop=s computer equipment, as well as the many
information slips lying around on the counter.  Januhowski stated that among
the seized information slips, he found a slip containing the identifying
information of Linda Carter, including her name, address, date of birth, and
her Texas driver=s license number.  Further, he pointed out
that someone had hand-written the number A284@ on the form.  Ron
Knotts, a forensic computing investigator, testified that he examined the
lap-top and thumb drive seized from Tejas Hi-Tek and discovered a file
containing a photograph of Fultcher.  Knotts stated that the filename for the
photograph was APicture 284.JPG.@  Knotts further
testified that he discovered photographs of the other women arrested in the
operation, and that the numbers associated with the filename of each photograph
also matched information slips recovered from the shop, each containing the
identifying information of another person.

Finally, Investigator Mike Kelly testified
that he also participated in the operation and was present when the womenCincluding FultcherCwere removed from
the white Lincoln Navigator.  He stated that he then searched the Navigator and
recovered multiple blank checks belonging to several different people,
including Linda Carter.   

This evidence did more than simply place
Fultcher at Tejas Hi-Tek on the day of her arrest.  The evidence shows that
Fultcher submitted an information slip with the intent of obtaining an
identification card.  Further, the evidence establishes that she was a
recognized and repeat customer of the business and had a photograph on file
from a prior transaction.  The number associated with her photo was
hand-written on an information slip containing the personal identifying
information of Linda Carter.  Fultcher was arrested after being removed from a
vehicle in which the police discovered blank checks carrying Carter=s name.








Fultcher contends that the State was
unable to prove her intent to defraud Carter without Jackson=s uncorroborated
testimony.  But as we have stated above, proof beyond a reasonable doubt is not
the standard of the accomplice-witness rule.  See Malone, 253 S.W.3d at
257.  All that was required of the State was to demonstrate that the
non-accomplice evidence tends to link Fultcher to the charged offense.  See
id.  We are satisfied that this evidence goes beyond Malone=s proximity-plus-suspicious-circumstances
standard.  See id.  Based on the cumulative impact of this evidence,
rational jurors could conclude that Fultcher was sufficiently connected to the
charged offense of fraudulent use or possession of Linda Carter=s identifying
information.  See id.  Consequently, we are satisfied that the State
successfully corroborated the accomplice testimony of Rochell Jackson according
to the requirements of the Code of Criminal Procedure.  See Tex. Code of
Crim. Proc. Ann. art. 38.14.  We overrule Fultcher=s second issue.  

B

In her third and fourth issues, Fultcher
contends that the evidence presented at trial is both legally and factually
insufficient to support her conviction for fraudulent use or possession of
identifying information.  Specifically, Fultcher asserts that the evidence is
insufficient to support her conviction because (1) the State relied extensively
on the unreliable testimony of accomplice-witness Jackson, (2) there is no
evidence that Fultcher had possessed Carter=s identifying
information, and (3) there is no evidence Fultcher had any intent to defraud
Carter.  The State responds that the evidence is sufficient for a rational jury
to convict Fultcher of the charged offense, and that such a conviction is not
manifestly unjust or against the great weight of the evidence.

1








In reviewing legal sufficiency, we look at
the evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).
Although we consider all the evidence presented at trial, we may not re‑weigh
the evidence and substitute our judgment for that of the jury.  King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given their
testimony, and it is the exclusive province of the jury to reconcile conflicts
in the evidence. Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App.
1998).  A jury is entitled to accept one version of the facts and reject
another, or reject any part of a witness=s testimony.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), abrogated on other
grounds, Laster v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  We
do not eliminate the testimony of an accomplice when analyzing the legal
sufficiency of the evidence as a whole. Long v. State, 245 S.W.3d 563,
569 (Tex. App.CHouston [1st Dist.] 2007, no pet.).

In reviewing the factual sufficiency of
the evidence, we begin with the assumption that the evidence is legally
sufficient under Jackson v. Virginia.  Laster v. State, 275
S.W.3d 512, 518 (Tex. Crim. App. 2009).  We view all the evidence neutrally.  Watson
v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006); Newby v. State,
252 S.W.3d 431, 435 (Tex. App.CHouston [14th Dist.] 2008, pet ref=d).  A jury=s verdict may be
set aside on the basis of factual insufficiency only if this court finds: (1)
the evidence is so weak that the verdict is clearly wrong and manifestly
unjust; or (2) the verdict is against the great weight and preponderance of the
evidence.  Watson, 204 S.W.3d at 414B15; Newby,
252 S.W.3d at 435. In our analysis we consider the evidence which Fultcher
claims is most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Newby, 252
S.W.3d at 435.  

Although we may disagree with the jury=s conclusion, we
must avoid substituting our judgment for that of the jury.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Newby, 252 S.W.3d at 435. 
It is not enough for this court to harbor a subjective level of reasonable
doubt to overturn a conviction that is founded on legally sufficient evidence. Watson,
204 S.W.3d at 417.  We cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Id.  Nor can we declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury=s resolution of
that conflict.  Id.  We must first be able to say, with some objective
basis in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict before we are justified in
exercising our appellate fact jurisdiction to order a new trial.  Id.








Circumstantial evidence is as probative as
direct evidence in establishing an actor=s guilt. Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  Indeed, circumstantial
evidence alone is enough to establish guilt.  Id.  Furthermore, the
standard of review on appeal is the same for both direct‑ and
circumstantial‑evidence cases.  Id.  As with a challenge to the
legal sufficiency of the evidence, we view all the evidence in a
factual-sufficiency review, including accomplice‑witness testimony.  Long,
245 S.W.3d at 570.

2

A person commits an offense if the person
obtains, possesses, transfers, or uses identifying information of another
person without the other person=s consent and with intent to harm or
defraud another.  Tex. Penal Code Ann. ' 32.51(b) (Vernon
2003).[2] 
AIdentifying
information@ means information that alone or in conjunction with
other information identifies a person, including a person=s name and social
security number, date of birth, or government‑issued identification
number.  Tex. Penal Code Ann. ' 32.51(a)(1)(A) (Vernon 2003 & Supp.
2008).








As discussed above in our review of the
evidence corroborating Jackson=s accomplice-witness testimony, Jackson
observed Fultcher enter the shop with three other women while carrying some
type of paperwork.  With her accomplices, Fultcher filled out an information
sheet and delivered it to Jaime.  Jaime recognized Fultcher and her accomplices
as repeat customers.  A computer file was discovered on the shop=s thumb drive
containing Fultcher=s photograph.  The filename associated
with this photograph contained the three-digit number A284,@ which was shown
to be hand-written on an information sheet containing Linda Carter=s identifying
information.  Jaime testified that it was standard procedure to write the
number from the photograph filename on the corresponding information sheet in
order to match pictures with identifying information.  There was also testimony
and documentary evidence that blank checks apparently associated with an
account belonging to Carter were recovered from the Lincoln Navigator right
outside the shop, where Fultcher was discovered just before her arrest. 
Further, Carter confirmed the accuracy of the identifying information on the
information sheet recovered from the shop, and denied giving consent to
Fultcher or anyone else to use her identifying information in such a manner.

Jackson=s
accomplice-witness testimony buttresses the evidence detailed above.  Jackson
testified that the four women, including Fultcher, went to Tejas Hi-Tek that
day to get fake identification cards so that they could then Awrite some checks
. . . in someone else=s name.@  Jackson related
that the group had obtained blank checks in several names, as well as
PublicData.com sheets for each individual named on the checks, from a third
party named ATasha.@  Jackson testified that the women had
done this before, and that each time they would pay $200.00 for each set of
checks and the matching Aidentity@ information. 
They would then go to Tejas Hi-Tek and obtain fake identification cards that
matched the names on the blank checks.  The women would then go to stores like
Wal-Mart, Target, or Ross and buy merchandise that later would be returned for
a cash refund.  The goal of the plan, according to Jackson, was to obtain
cash.  Jackson further confirmed the procedure whereby Jaime would write the
number corresponding to the customer=s photograph onto
the information slip of the desired identification card.  Jackson demonstrated
that the number associated with her own photograph, which was recovered from
the Tejas Hi-Tek thumb drive, was written on the information sheet she
submitted in order to obtain her fake identification that day.








Jackson gave powerful testimony
specifically linking Fultcher to the offense.  Jackson identified the
handwriting on the information sheet containing Carter=s identifying
information as that of Fultcher.  Jackson also described Fultcher as
participating in planning the offense.  Jackson testified that she was certain
that Fultcher had planned to use the fake  identification to write checks for
merchandise.  According to Jackson, A[W]e all talked
about it . . . we all picked out the checks before we went there . . . we all
picked out which person we were going to do . . . we had done it before.@ 

This evidence demonstrates that Fultcher
possessed Carter=s identifying information, which she then
used when she filled out the information sheet seeking to obtain a fake
identification card bearing that information.  The evidence also demonstrates
Fultcher=s intent to harm
Carter and defraud third parties by using the fake identification to write
checks on Carter=s account to buy merchandise.  Finally,
there was evidence that Fultcher possessed and used Carter=s identifying
information without Carter=s consent. 

Viewing the evidence in a light most
favorable to the verdict, as we must, we conclude that a rational trier of fact
could have found this evidence sufficient to prove the essential elements of
the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Vasquez,
67 S.W.3d at 236.  We overrule Fultcher=s third issue. 

3 








The first basis on which Fultcher
challenges the factual sufficiency of the evidence is that the State relied
heavily upon the accomplice-witness testimony of Jackson.  Fultcher contends that
accomplice-witness testimony, by its very nature, is discredited.  See
Walker v.  State, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981).  Such
testimony, Fultcher argues, is untrustworthy and is to be received and acted
upon with caution.  See id.  Jackson testified to several prior criminal
convictions during her testimony.  She also testified that she had charges
resulting from this incident pending against her.  Jackson stated that, while
she had not been guaranteed any specific benefits, the judge would consider the
value of her testimony  to the State when considering her punishment.  But
Jackson=s testimony was
also compellingly direct, and she did not waver under cross-examination.  The
jury, as the trier of fact, is the final judge of the credibility of the
witnesses.  Laster, 275 S.W.3d at 524B25.  The jury may
choose to believe or disbelieve any portion of the testimony.  Id. 

Further, Fultcher argues that there was no
evidence that she actually ever possessed Carter=s identifying
information.  She points out that there was no evidence that Carter=s information was
found on her person or in her purse.  APossession@ means actual
care, custody, control, or management.  Tex. Penal Code Ann. ' 1.07(a)(39)
(Vernon 2003 & Supp. 2008).  Investigator Johnson testified that he
observed Fultcher filling out an information slip.  He also testified that
while the women were filling out the forms, he saw each of them referring to
the papers they had carried in with them.  An information slip was recovered
containing Carter=s identifying information with a
hand-written number corresponding to Fultcher=s photographCin the same manner
as other slips were linked to accomplices= photographs. 
Jackson also testifiedCwithout objection or rebuttalCthat it was
Fultcher=s handwriting on
the slip bearing Carter=s information.  This evidence would
demonstrate that Fultcher had the actual care, custody, and control of Carter=s identifying
information at the time she filled out the Tejas Hi-Tek information form.

Further, Apossession@ is only one means
by which the charged offense could be accomplished.  AUse@ was also an
acceptable means, and there was considerable evidence of Fultcher=s Ause@ of the
information in her attempt to obtain a fake identification card.  That Fultcher
neither received the card nor was found to possess the identifying information
on or near her person does not make the evidence insufficient when there is
evidence regarding her use of the information.  The jury could, and likely did,
consider this evidence in reaching its verdict.








Finally, Fultcher argues that during her
trial, several investigators testified that Fultcher=s mere possession
of Carter=s identifying information for purposes of obtaining a
novelty identification card would not, by itself, constitute an offense.  While
this is true, it ignores other powerful evidence that satisfies the other
elements of the offense.  Carter testified that she did not consent to the use
of her identifying information.  Jackson=s testimony
concerning the group=s intent to Aget some IDs and
write some checks,@ her explanation of the plan to purchase
merchandise and then return it for cash refunds, and then the exhibition of the
blank checks themselves effectively demonstrate Fultcher=s fraudulent
intent, satisfying the remaining elements of the offense.

Based on this evidence, we cannot conclude
that Fultcher=s conviction was Aclearly wrong,@ Amanifestly unjust,@ or that the great
weight and preponderance of the evidence contradicts the jury=s verdict.  The
evidence is factually sufficient to support the jury=s verdict.  See
Watson, 204 S.W.3d at 417.  We overrule Fultcher=s fourth issue. 

C

In her first issue, Fultcher contends that
the trial court abused its discretion by allowing an unredacted photo to be
admitted into evidence and published to the jury.  Specifically, Fultcher
asserts that the unredacted language displayed on the t‑shirt she was
wearing in the photograph was without probative value, unfairly prejudicial,
and therefore improperly influenced the jury=s impression of
Fultcher.  The State responds that the photograph was highly probative, lacking
any serious prejudicial impact, and any possible error would be harmless in the
face of the substantial evidence against Fultcher.








Generally, we review a trial court=s admission of
evidence under an abuse‑of‑discretion standard.  Walters v.
State, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). A trial court does not
abuse its discretion if its evidentiary ruling was within the Azone of reasonable
disagreement,@ and was correct under any legal theory applicable to
the case. Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App.
2007); Bargas v. State, 252 S.W.3d 876, 889 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  Thus, because the trial court is usually in the best
position to decide whether evidence should be admitted or excluded, we must
uphold its ruling unless its determination was so clearly wrong as to lie
outside the zone within which reasonable persons might disagree.  See
Winegarner, 235 S.W.3d at 790; Hartis v. State, 183 S.W.3d 793, 801B02 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).

During Fultcher=s trial, the State
sought to admit into evidence the photograph of Fultcher retrieved from the
Tejas Hi‑Tek thumb drive.  The photograph depicted Fultcher wearing a
white t‑shirt with the words AI am the kid your
parents warned you about@ printed across the front.  Fultcher=s defense counsel
approached the bench and the following conference took place:

DEFENSE:   I have no objections to
the pictures, themselves.

COURT:      Do you want to take the
witness on voir dire or what?

DEFENSE:   I have no objections to
the pictures, themselves.  However on my client=s picture we will object to it because of the
contents of the t‑shirt.

COURT:      Does the State want to
be heard on this matter?

STATE:       Well, that is the
picture she had taken. I am sorry.  I mean, I can=t do anything about that.

DEFENSE:   Your Honor, it is
highly, highly prejudicial.  I mean, this is highly prejudicial and not
probative, and there is no reason to show the jury this.  If we can just black
through that.

COURT:      I will have to overrule
your objection.   

DEFENSE:   Can I put on the record
that I am objecting to the contents of the t‑shirt in this picture.  It
is highly prejudicial to my client, and it can definitely sway the jury.

COURT:      The record will so
reflect.

DEFENSE:   I have no objections to
Exhibits 28, 29, and 30.

COURT:      All right.  There being
no other objections, the exhibits will be admitted, other than the objections
stated.

 








A photograph is typically admissible if
testimony about what it depicts is also admissible.  Gallo v. State, 239
S.W.3d 757, 762 (Tex. Crim. App. 2007).  In other words, if some subject of
testimony is relevant, photographs of the same are also relevant.  Id. 
Rule 401 provides that evidence is relevant if it has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.@  Tex. R. Evid. 401.

On appeal, Fultcher contends that the
nature of the charged offense Acoupled with the words on the shirt she
wore in the photo directly fed into the jury=s finding of
guilt.@  Fultcher offers
no evidence to demonstrate the text=s impact on the
jury=s verdict.  But
even presuming that the trial court erred in failing to redact the writing on
the shirt from the photograph, the error is harmless.  

We must disregard nonconstitutional errors
that do not affect the substantial rights of the defendant.  Tex. R. App. P.
44.2(b).  Erroneous admission of evidence does not affect substantial rights of
the defendant if the appellate court, after examining the entire record, is
assured the error did not influence the jury=s decision or only
slightly influenced it.  See Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002).  AIn assessing the likelihood that the jury=s decision was
adversely affected by the error, the appellate court should consider everything
in the record, including any testimony or physical evidence admitted for the
jury=s consideration,
the nature of the evidence supporting the verdict, the character of the alleged
error and how it might be considered in connection with other evidence in the case.@  Motilla,
78 S.W.3d at 355.

The substantial evidence against Fultcher
overrides any concern that the text on Fultcher=s t‑shirt
affected the jury=s verdict.  Because we are assured that
the error did not influence the jury=s decision, or
only slightly influenced it, we conclude Fultcher=s substantial
rights were not affected.  Therefore, any error was harmless.

We overrule Fultcher=s first issue.

 

 








* * *

For the foregoing reasons, we affirm the
trial court=s judgment.

 

 

 

 

/s/      Jeffrey
V.  Brown

Justice

 

 

 

 

Panel consists of Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. 
R.  App.  P.  47.2(b).









[1]  Several investigators testified that information
from PublicData.com is frequently used for fraudulent purposes such as identity
theft and the use of stolen credit cards or checks. 





[2]  The Texas legislature amended section 32.51(b) in
2007, making several changes.  See Act of May 22, 2007, 80th Leg., ch.
631, ' 1, eff. Sept. 1, 2007.  Because these changes were
made after the date of the offense at issue, we will apply the prior version of
the statute.