COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| DIANE YBARRA, | | No. 08-10-00185-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 379th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC # 2006CR10616) |
| | § | |

**O P I N I O N**

Diane Ybarra was charged by indictment with the offense of fraudulent use or possession of identifying information. She pled not guilty and the case proceeded to a jury trial. After hearing all evidence, the jury returned a guilty verdict. In accordance with Appellant's election, the trial court assessed punishment and sentenced her to two years' imprisonment in the Texas Department of Criminal Justice. The court suspended the sentence and placed her on probation for a term of four years. The court also ordered her to pay a $2,500 fine and restitution in the amount of $251.74. In a single issue, Appellant complains the evidence was legally insufficient to support her conviction. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

According to the indictment, on or about August 30, 2006, Appellant used identifying information of the complainant, Yvonne Martinez, to obtain property on credit without Martinez's consent and with the intent to harm and defraud another. The indictment specified that the identifying information was Martinez's name.

At trial, Martinez testified that she and Appellant first became acquainted when Appellant

taught Martinez's son in kindergarten. Sometime after that, the Martinezes moved away from San Antonio for a period of five and a half years. When they returned, Martinez and the Appellant became reacquainted through their church. Martinez acknowledged that she and her husband Frank were the godparents to Appellant's children, but she testified the women had never been particularly close friends.

Martinez planned to meet a friend for lunch at Souper Salads in late August 2006. Before she left home, she checked her mail and took the mail inside the restaurant with her, including a catalog from Seventh Avenue. Martinez had never purchased anything from Seventh Avenue and did not have an account with them, but she believed she had received the catalog because of a shared mailing list. As the two women were finishing lunch, Appellant showed up at the restaurant. Appellant did not eat, but sat with the women for about twenty minutes. When the trio got up to leave, Martinez left the catalog on the table to be thrown away. Appellant noticed it and asked her, "What about your catalog?" to which Martinez responded, "It's okay, they can just trash it." All three women walked out of the restaurant together.

A few days later, Martinez traveled to Las Vegas. On September 6, she returned home to find several boxes from Seventh Avenue on her doorstep. She had come back early because she had been called to jury duty. Appellant knew of her trip but did not know that Martinez had cut the trip short. Along with the packages, Martinez found an invoice from Seventh Avenue with her name on it. immediately called the company to inform them that she had not ordered the items. A representative told her the date the order was placed. A second order was delayed because of some embroidery, and that order would be shipped to the other address Martinez had provided. Martinez questioned the representative about the items being embroidered. She was informed the names to be embroidered were "Kelsey" and "Kyle" which she immediately recognized as the names of

Appellant's children. Martinez then drove to the address the representative gave her, and verified that the address for the second shipment was Appellant's home address. At that point, Martinez called the police because she felt as though her credit and identity had been stolen.

Martinez also testified that she attempted to cancel the second shipment, but was told the items had already shipped and she would just have to return them once they were delivered. Martinez explained that the items were not being shipped to her house and at that point, she filed a report with Seventh Avenue's fraud division to alert them of the issue. The company then placed a fraud alert on the account such that no orders could be made to either of the two addresses. Martinez asked the representative how Appellant was able to create the account under her name in the first place, and the representative told her that Appellant could open an account by verifying a name, address, phone number, and the key code from the back of the catalog.

Martinez insisted that she never gave Appellant permission to use her name to order items from the catalog. She never even suggested it would be all right for Appellant to order items under her name, regardless of whether Appellant promised to pay her back. There was never a discussion about Appellant ordering from the catalog and she never told Appellant to take the catalog. In fact, when all three women walked out of the restaurant together, the catalog was on the table to be thrown away. Martinez had no idea it was so easy to create an account and order items under someone else's name, and if she had known, she never would have left the catalog at the restaurant.

After Martinez filed a complaint with police, Detective Moreno went to her home and took photographs of the packages. Martinez then went down to the station and provided a statement. She did not contact Appellant. But Appellant contacted Martinez as evidenced by three voice mail messages which were played for the jury. In the messages, Appellant admitted that she created the account, placed the order, and changed the address for the second shipment to her own home. She

voiced her belief that Martinez gave her permission to order the items, as long as Appellant paid her back.

Detective Moreno contacted Appellant on October 9, 2006 and informed her of the complaint filed by Martinez. Appellant came in to the station and gave a statement:

> I have been friends with Yvonne and Frank Martinez for about 15 years. She is the comadre [godmother] to my children Kelsey and Kyle. I went to lunch at Souper Salad with Yvonne and her friend, Felicia, around the third week on [sic] August. She had brought a mail order from Seventh Avenue. She told me that they kept sending her this catalog but she never ordered anything. She asked me if I wanted to order anything. She told me that I could order some items if I promised to pay for them. Yvonne knew that I didn't have any credit. She knew that my kids needed some items. Yvonne told me that I could order some stuff if I promised to pay for them. She didn't want me to mess up her credit. I took the catalog home. Yvonne went on vacation to Las Vegas. I called the catalog company and placed an order for about $400 in items. The next day I called the company and tried to get them to change the account to my name and address. They changed the address for me. I had no intention of trying to harm or defraud Yvonne or the catalog company. Yvonne gave me the catalog and gave me permission to order items in her name with the promise that I would pay for them and not ruin her credit.
>
> Yvonne came back and we talked about the order. I don't know why but she was trying to change her mind and tell me that she didn't give me permission, which is not the truth. I called and tried to cancel the order because Yvonne was trying to change her mind. I never received the items at my house. I tried to call Yvonne several times, but she wouldn't answer her phone. I left several messages trying to get her to talk to me about the misunderstanding. My brother began to have heart problems so my time began to be taken up by that. I was going to write Yvonne a letter asking for her forgiveness. I can't believe that Yvonne would do this. She is supposed to be a Christian. I have asked for her forgiveness. This whole deal is a total misunderstanding. Maybe it was a miscommunication when she gave me the catalog. I had no intent to harm or defraud Yvonne. I taught her children in kindergarten. I would never do anything to hurt my friendship with Yvonne or Frank.

Appellant did not testify at trial.

By the time of trial, Martinez had not received any payment from Appellant. The original invoice totaled $455. Martinez received credit for the items in the first shipment, which she returned. She was not given credit for the items in the second shipment which was sent to

Appellant's address in the amount of $251.74.

In her sole issue on appeal, Appellant challenges the legal sufficiency of the evidence to support her conviction because no rational jury could have found that she acted with the intent to harm or defraud another.

## STANDARD OF REVIEW

In a legal sufficiency review, we view all evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found all of the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). In conducting our review, we must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318-19, 99 S.Ct. At 2789; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010). As the fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

On appeal, we consider all admitted evidence regardless of whether it was admissible or inadmissible. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). The fact that the record includes conflicting evidence does not render the evidence insufficient. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim.App. 1996). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778. This standard applies equally to direct and circumstantial cases. *See Geesa v. State,* 820

S.W.2d 154, 163 (Tex.Crim.App. 1991).

## TEXAS PENAL CODE SECTION 32.51

Appellant was charged with fraudulent use or possession of identifying information under Texas Penal Code, Section 32.51. A person commits an offense if the person obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent. TEX.PENAL CODE ANN. § 32.51 (b)(1)(West 2011). The offender must obtain, possess, transfer, or use the item with the intent to harm or defraud. *Id*. For purposes of Section 32.51, "identifying information" is defined as: "information that alone or in conjunction with other information, identifies an individual. TEX.PENAL CODE ANN. § 32.51 (a)(1). Such identifying information includes a person's:

> (A) name and date of birth;
>
> (B) unique biometric data, including the person's fingerprint, voice print, or retina or iris image;
>
> (c) unique electronic identification number, address, routing code, or financial institution account number;
>
> (D) telecommunication identifying information or access device; and
>
> (E) social security number or other government-issued identification number.

TEX.PENAL CODE ANN. § 32.51(a)(1). Intent is defined under Texas Penal Code, Section 6.03(a) as follows:

> A person acts intentionally, or with intent, with respect to the nature of [her] conduct or to a result of [her] conduct when it is [her] conscious objective or desire to engage in the conduct or cause the result.

TEX.PENAL CODE ANN. § 6.03(a)(West 2011).

## ANALYSIS

Appellant concedes that she used Martinez's name to create an account and order items under

that account. She argues only that no rational jury could have found that she had the intent to defraud or harm another. Since she reasonably believed she had Martinez's consent when she placed the order and she intended to pay for the items ordered, she lacked the requisite intent to defraud either Martinez or Seventh Avenue.

The jury charge instructed that:

A person commits an offense if the person uses identifying information of another person without the other person's consent and with intent to harm or defraud another.

According to the charge, "identifying information" means:

[I]nformation that alone or in conjunction with other information identifies an individual, including an individual's name.

The charge also included the definition of intent. *See* TEX.PENAL CODE ANN. § 6.03(a). Finally, the charge provided the following instruction with respect to guilt:

[I]f you find from the evidence beyond a reasonable doubt that . . . the defendant, Diane Ybarra, with intent to harm or defraud another, and without the consent of Yvonne Martinez, did use identifying information of Yvonne Martinez, to-wit: Yvonne Martinez's name, by using Yvonne Martinez's name to obtain property on credit, you will find the defendant guilty as charged in the indictment.

The State has the burden to prove each and every element of the charged offense beyond a reasonable doubt. The State may meet its burden to prove the intent to harm or defraud through circumstantial evidence. *Burks v. State*, 693 S.W.2d 932, 936-37 (Tex.Crim.App. 1985); *Baker v. State*, 552 S.W.2d 818, 820 (Tex.Crim.App. 1977). "The intent to harm or defraud another can be inferred from the acts, words, and the conduct of the accused." *Woodley v. State*, No. 08-00-00470-CR, 2003 WL 550298, at *4 (Tex.App.--El Paso Feb. 27, 2003, pet. ref'd)(mem. op.), *citing Goldstein v. State*, 803 S.W.2d 777, 791 (Tex.App.--Dallas 1991, pet. ref'd).

To find Appellant guilty of fraudulent use or possession of identifying information, the jury had to find, beyond a reasonable doubt, that Appellant used Martinez's name to open an account and

obtain property on credit without her consent, and that Appellant did so with the intent to harm or defraud *another*. *See* TEX.PENAL CODE ANN. § 32.51. "Harm" is defined under the Texas Penal Code as:

> [A]nything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested.

TEX.PENAL CODE ANN. § 1.07(a)(25)(West 2011). Martinez testified that Appellant acted without her permission when she called Seventh Avenue and represented herself as Mrs. Martinez. As a result of Appellant's actions, Martinez incurred $455 in debt, over $200 of which she still owes to a credit agency. She had not received a single penny from Appellant as of the date of trial.

When conflicting evidence is introduced, it is the province of the jury to resolve the conflicts. *Brooks*, 323 S.W.3d at 899. In doing so, a jury is free to determine the credibility and weight to give testimony and may choose to believe all, some, or none of the evidence presented. *See Long v. State*, 245 S.W.3d 563, 570 (Tex.App.--Houston [1st Dist.] 2007, no pet.)("A jury is entitled to accept one version of the facts and reject another."). In a legal sufficiency review, we accord deference to a jury's resolution of conflicts in and the weight and credibility to be given to the evidence. *Brooks*, 323 S.W.3d at 899. There was sufficient testimony by Martinez to prove beyond a reasonable doubt that when Appellant created the account and ordered the items, she did so with the intent to harm or defraud another. A rational jury could have determined that in creating the account, Appellant misrepresented herself to Seventh Avenue as Martinez, and that when she purchased the items, she created a debt for which Martinez is liable. From that evidence, a rational jury could conclude that Appellant acted with the requisite intent. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App. 2000). Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was legally sufficient to establish each and every element, including the intent to harm or defraud

another, beyond a reasonable doubt. *See Romero v. State*, No. 08-03-00520-CR, 2005 WL 1706553, at *7 (Tex.App.--El Paso July 15, 2005, no pet.)(not designated for publication). We overrule Issue One and affirm the judgment.


December 7, 2011

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)